Nathan SCHULTZ and Duane Schultz, Individually and trading as J. C. Schultz Company, a Partnership

v.

ONAN CORPORATION and A. F. Shane Company Onan Corporation, Appellant.

No. 81–2105.

United States Court of Appeals, Third Circuit.

Argued Jan. 14, 1982.

Decided May 28, 1982.

Peter Dorsey (argued), John H. Lindstrom, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Mn., Richard T. Wentley, Craig W. Jones, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

Eugene J. Brew, Jr. (argued), McClure, Dart, Miller, Kelleher & White, Erie, Pa., Douglas P. Painter, Painter, McGuiness & Painter, Cleveland, Ohio, for appellees.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and WEINER,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

FACTS

Onan Corporation ("Onan," "defendant"), a manufacturer of electrical equipment, and Joseph Schultz Co. ("Schultz," "plaintiffs"), a distributor, were parties to a distributorship agreement signed by Joseph Schultz on June 3, 1977, and by Onan on June 15, 1977. The 1977 agreement was the last in a series of similar agreements, the first of which

* Hon. Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

had been signed in 1961. Article 10 of the 1977 agreement provided in pertinent part:

## ARTICLE 10

Effective Date of Agreement and Termination

A. Effective Date. This Agreement shall become effective on the date of acceptance by Onan as evidenced by the signature of its authorized officer hereon and shall remain effective until the 31st of December in the year of the 3rd anniversary of this agreement, unless terminated by either party in accordance with this Article.

B. Termination. Termination shall be governed by the following . . . .

1. Either party may terminate this Agreement for any reason upon sixty (60) days written notice to the other.

2. Onan may terminate this Agreement upon thirty (30) days written notice to Distributor in the event Distributor shall have failed to fulfill any one or more of Distributor's responsibilities set forth in Article 9 of this Agreement. Appendix at 423A.[1] Thus, even if none of its termination provisions was invoked, by its own terms the 1977 agreement had a fixed duration and would terminate on December 31, 1980.[2]

On March 24, 1978, Onan wrote to Schultz that "[i]n accordance with previous communications with you, please be advised that Onan is hereby giving notice that the distributorship relationship between Onan and J. C. Schultz Company is to be terminated sixty (60) days from the date of this letter." Appendix at 17A.[3] Schultz filed suit seeking damages for alleged federal antitrust and state law violations, and the jury awarded Schultz $45,500 under the Minnesota doctrine of recoupment. That doctrine, which is discussed *infra*, allows a franchisee/distributor under certain circumstances to recover from the franchisor the amount of his investment which he has not reclaimed from the operation of the franchise at the time of its termination by the franchisor.

Onan has appealed. The parties agree that Minnesota law applies,[4] and that the sole theory of recovery presented to the jury was the Minnesota doctrine of recoupment. On appeal, the only issue is whether

---

**1.** Part 3 of Article 10(B) provided:

Onan may terminate this Agreement by written notice given to Distributor, effective immediately, in any of the following events:

(a) Any assignment or attempted assignment by Distributor of this Agreement or any interest or obligations arising thereunder.

(b) Any change in ownership, control or operating management of Distributor, whether voluntary, involuntary, by operation of the law, resulting from death or mental incapacity or otherwise.

(c) Failure of Distributor for any reason to function in the ordinary course of business or failure for a period of ten (10) consecutive days to keep its facilities open during and for not less than the hours customary in the trade in the Area.

(d) In the event Distributor becomes insolvent, is adjudged bankrupt, files or has filed against it, any petition under any of the provisions of the Bankruptcy Act or any state law relating to the insolvency, or if a receiver is appointed for its business or property, or if Distributor makes an assignment for the benefit of creditors, attempts to assign this Agreement without written consent of Onan, or, in the opinion of Onan, suffers its credit to become impaired.

**2.** The 1977 agreement in its entirety appears in the appendix at 417A–430A.

Plaintiffs seem to contend that Joseph Schultz' sons, Nathan and Duane Schultz, became the owners of the distributorship, which was then renamed the J. C. Schultz Co., at some point in the Schultz/Onan relationship. We do not address that contention. This suit was based by plaintiffs on the distributorship agreement, appendix at 7A, ¶ 7 of the complaint, and was tried as a suit on the agreement. *See* appendix at 22A–23A (Plaintiffs' Points for Charge), 29A–38A (jury charge). Onan did not rely on any change in ownership as the justification for termination; rather, Onan terminated the agreement pursuant to Article 10(B)(1) thereof.

**3.** In a letter dated April 17, 1978, Onan, at Schultz' request, supplied several reasons for the termination. Appendix at 433A. Whether those reasons would constitute good cause for termination was apparently not decided below.

**4.** Article 22 of the agreement provides: "This Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota." Appendix at 427A.

or not the trial judge correctly ascertained and applied Minnesota recoupment law.[5]

## DISCUSSION

The threshold question here is whether recoupment law applies to the facts presented by this case. The sole issue on which the parties requested jury instructions, and the sole subject on which the jury was charged, was the Minnesota doctrine of recoupment. Appendix at 22A–23A (Plaintiffs' Points for Charge); 24A–27A (defendant's Requested Points for Charge); 28A–38A (jury instructions).[6] Both sides relied below on three cases: *Ag-Chem Equipment Co., Inc. v. Hahn, Inc.*, 480 F.2d 482 (8th Cir. 1973), *McGinnis Piano and Organ Co. v. Yamaha International Corp.*, 480 F.2d 474 (8th Cir. 1973), and *Clausen & Sons, Inc. v. Theodore Hamm Brewing Co.*, 395 F.2d 388 (8th Cir. 1968).[7] On appeal, the parties rely on these three cases, and also cite *Gilderhus v. Amoco Oil Co.*, 1980–81 Trade Cases ¶ 63,647 (D.Minn.1980), which was decided immediately before the trial in this case, and of which neither the court nor the parties had any knowledge at the time of the trial. *See* transcript of oral argument at 18.

In *Clausen*, the court defined the Minnesota doctrine of recoupment:

[U]nder Minnesota law where an exclusive franchise dealer under an implied contract, terminable on notice, has at the instance of a manufacturer or supplier invested his resources and credit in establishment of a costly distribution facility for the supplier's product, and the supplier thereafter unreasonably terminates the contract and dealership without giving the dealer an opportunity to recoup his investment, a claim may be stated [in recoupment].

395 F.2d at 391.[8] In *Ag-Chem*, the court emphasized that "a threshold requirement to the right [of recoupment] is the existence of an agreement which is terminable at will." 480 F.2d at 487.[9]

In *Clausen, Ag-Chem*, and *McGinnis* the contracts were all oral agreements of unspecified duration, and the courts applied recoupment doctrine in suits based on their termination. In *Gilderhus*, on the other

---

5. Schultz' request for certification of a class action was denied, appendix at 18A, and that denial has not been raised on appeal. At the close of plaintiffs' case, the trial court granted both defendants' motions for directed verdicts on plaintiffs' antitrust claims, appendix at 41A. The trial court also dismissed defendant A. F. Shane Co. from the case. None of those rulings has been challenged here.

6. Recoupment doctrine was also the sole subject of defendant's motion for j. n. o. v. or a new trial, and of the trial judge's denial of that motion. Appendix at 42A–46A. Onan apparently moved for a directed verdict on the recoupment claim at the close of all the evidence, which was denied. Appendix at 47A.

7. On appeal, plaintiffs state that both they and Onan asked the trial judge to base the jury instructions on these three cases. Appellees' Brief at 26. Schultz also cited *O. M. Droney Beverage Co. v. Miller Brewing Co.*, 365 F.Supp. 1067 (D.Minn.1973) to the trial court. The nature of the contract involved in *Droney* is unclear; indeed, the court in *Droney* explicitly refused to rule that a contract did (or did not) exist. In any event, *Droney* unlike this case dealt with a request by a beer distributor for a preliminary injunction. In the course of denying the injunction, the trial court quoted

extensively from *McGinnis; Droney* thus adds nothing to plaintiffs' argument.

8. Under recoupment theory, the plaintiff may *only* recover *at most* that portion of his investment which he has not had the chance to reclaim from the operation of the distributorship. *McGinnis*, 480 F.2d at 482.

9. It is noteworthy that the contracts in the three cases applying recoupment law were all oral or implied agreements. The contract on which *Clausen* was based was an oral distributorship agreement, 395 F.2d at 389, of indefinite duration, *id.* at 390–91. The contract on which *McGinnis* was based was an implied franchise/dealership agreement, *id.* at 477, containing no "provisions for duration or termination," *id.* at 479. Although the franchise relationship between the parties in *Ag-Chem* had at the start of that relationship been embodied in a written agreement, from October 1, 1964 until the termination of the distributorship in 1968, "the parties continued their relationship on an oral basis." 480 F.2d at 485.

In *McGinnis* and *Ag-Chem*, the court noted that the agreements were *terminable at will* upon reasonable notice *because* they had "no definite duration." 480 F.2d at 487; *see* 480 F.2d at 479.

hand, the court examined a written contract and ruled that recoupment doctrine did not apply. In that case, plaintiff, as in the other three cases, sought to recover its unrecouped investment under Minnesota's recoupment law. The court, relying on *Ag-Chem*, ruled that "[i]f the franchise agreement is not terminable at will, but rather is for a fixed duration, the recoupment theory is inapplicable." 1980–81 Trade Cases at 77,492. The franchise agreement in *Gilderhus* was for a fixed duration and terminable for just cause, *id.*; thus, recoupment doctrine could not apply in a suit based on its termination.

If the agreement here fulfills the criteria of *Gilderhus*—i.e., if the agreement (1) specified its duration and (2) could not be terminated except for just cause—then recoupment law does not apply. It is clear that the agreement specified its duration: the agreement was signed in June 1977 and was to run through December 1980. Thus, the question becomes whether the agreement, which stated that it was terminable by either party "for any reason," was an "at will" contract, or whether the agreement was only terminable for just cause.

The record below is somewhat confusing as to the positions of the parties on this issue. In their pre-trial narrative (document 34 in the record), plaintiffs argued that Onan's termination of the distributorship agreement was wrongful because it was done "without any adequate reason as required in the agreement." Document 34

at 3. Onan, in its pre-trial narrative (document 36 in the record), argued that the distributorship agreement was "terminable at will." Document 36 at 2. On appeal, plaintiffs at oral argument contended that the distributorship could only be terminated for a "proper reason," transcript of oral argument at 22–23, and cited the Minnesota Franchise Act, Minn.St. 80C, which, according to plaintiffs, established the rule that "you cannot cancel a franchise in Minnesota without just cause." Transcript of oral argument at 16. However, at oral argument, counsel for plaintiffs apparently altered his position to assert that the distributorship agreement was terminable at will. Transcript of oral argument at 23.[10] Counsel for defendant, on the other hand, argued before this court that the agreement was not an "at will" contract. Appellant's Brief at 16; transcript of oral argument at 10.

■ We think, as plaintiffs at first argued, that as a matter of Minnesota law a franchise agreement to which Minnesota law applies cannot be terminated prior to its end date except for just cause. In *Mason v. Farmers Insurance Companies*, 281 N.W.2d 344, 348 (Minn.1979), the Supreme Court of Minnesota cited Minn.Reg. SDiv 1714(e, f), which "requires good cause for any franchise termination as well as 60 days notice."[11] The regulation apparently became effective on January 13, 1975, 281 N.W.2d at 348, and thus applies to the agreement at issue here, which ran from June 1977.[12]

**10.** Counsel for plaintiffs stated that he was "satisfied" to agree that the contract was an at will agreement, because in that event recoupment doctrine would apply to its termination. Transcript of oral argument at 23.

In their brief on appeal, plaintiffs had contended that the agreement was terminable at will. Appellees' brief at 9.

**11.** In addition, *see United States Surgical Corp. v. Oregon Medical-Surgical Specialties, Inc.*, 497 F.Supp. 68, 70, 72 (S.D.N.Y.1980) (construing Minnesota law) (good cause required to terminate franchise).

**12.** Minn.Reg. SDiv 1714 provides, in part:

[i]t shall be 'unfair and inequitable' for any person to:

\*    \*    \*    \*    \*    \*

(e) Terminate or cancel a franchise without first having given written notice setting forth all the reasons for such termination ... at least 60 days in advance of such termination ...;

or

(f) Terminate or cancel a franchise except for good cause which shall be defined as failure by the franchisee substantially to comply with those reasonable requirements imposed upon him by the franchise ....

Minn.Reg. SDiv 1714 was promulgated pursuant to Minn.St. 80C.14 of the Minnesota Franchise Act. That section provides:

No person, whether by means of a term or condition of a franchise or otherwise, shall engage in any unfair or inequitable practice in contravention of such rules as the commis-

Thus, by operation of the Minnesota Franchise Act, the agreement here could only be terminated prior to its end date for just cause. Further, if the agreement's provision that it was terminable "for any reason" is interpreted as meaning that the agreement was terminable "at will," then that provision is void under Minn.St. 80C.21, which states that "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void." If "for any reason" means "at will," it would require plaintiffs to waive their right to an agreement terminable for just cause; thus, under Minn.St. 80C.21 the provision is void. If, on the other hand, "for any reason" means "for any *good* reason," the provision is valid under Minnesota franchise law. In accordance with Minnesota law, which states that a franchise may only be terminated for good cause, in accordance with the rule requiring that a contract be interpreted, if possible, in a manner upholding all of its provisions, *see* Restatement [Second] of Contracts § 203(a), and in accordance with the statement that "Minnesota courts lean towards a liberal construction of any contract, as not being terminable at will," *Clausen*, 395 F.2d at 391 n.4, we therefore conclude that "for any reason" means "for any good reason," in other words, "for just cause." [13]

■ Under *Gilderhus*, if a written franchise agreement specifies its duration and may only be terminated in the interim for just cause, the doctrine of recoupment does not apply. Because the agreement here had those characteristics, plaintiffs may not recover under recoupment doctrine.

The fact that plaintiffs may not recover under recoupment theory, however, does not necessarily end this case. The Minnesota Franchise Act explicitly states that nothing in that Act "shall limit any liability which may exist by virtue of any other statute or under common law if sections 80C.01 to 80C.22 were not in effect." If, for example, plaintiffs are entitled to an opportunity to prove that defendant terminated the agreement without just cause, then plaintiffs might be entitled to recover under a breach of contract theory, given that the contract itself requires good cause for interim termination. We express no view, however, on the question of whether plaintiffs are now entitled to assert any alternative breach of contract theory of recovery, or on whether plaintiffs have waived any such claim.

Because the trial court did not have the benefit of the ruling in *Gilderhus* that recoupment theory does not apply where an agreement specifies its duration and is terminable in the interim only for just cause, and for the reasons set forth above, we reverse and remand for proceedings consistent with this opinion.

sioner may adopt defining as to franchises the words 'unfair and inequitable'. Any violation of this section is enjoinable by a court of competent jurisdiction.

The distributorship in question here apparently fits the definition of "franchise" set forth in Minn.St. 80C.01(4)(a)–(c); 80C.01(9). In any event, the parties seem to agree that the distributorship here was a franchise; this was not an issue below or on appeal. The panel at oral argument referred to the relationship of the parties as a "franchise." Transcript of oral argument at 10 (during Onan's argument); 21 (during plaintiffs' argument). Neither party objected to that characterization.

13. It is to be noted that this interpretation of the contract is consistent with the Restatement [Second] of Contracts § 205, which imposes a duty of good faith and fair dealing on parties to a contract.