**McKINNEY DRILLING COMPANY, Plaintiff-Appellee,**

v.

**The COLLINS COMPANY, INC. and United States Fidelity and Guaranty Company, Defendants-Appellants.**

**No. 81–7594.**

United States Court of Appeals, Eleventh Circuit.

March 21, 1983.

William D. Coleman, Capell, Howard, Knabe & Cobbs, P.A., Montgomery, Ala., for defendants-appellants.

J. Ross Forman, III, Birmingham, Ala., for plaintiff-appellee.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

PER CURIAM:

In this diversity contract action, the plaintiff persuaded the district court that it was entitled to additional compensation for

encountering unexpected rock formation while drilling holes in the ground for the installation of caissons. Deciding that the district court, 517 F.Supp. 320 (N.D.Ala.), was not clearly erroneous in determining the parties' intent and rendering judgment for $41,630.22, we affirm essentially for the reasons given by the district court.

In 1979 McKinney Drilling Co., a subcontractor, agreed with The Collins Company, a general contractor, to install eight 72-inch drilled caissons in connection with construction of additions to the Dry Creek Waste Water Treatment Plant in Decatur, Alabama. A caisson is a circular column of concrete which is installed from the top of the ground by a drilling process to a rock stratum capable of supporting loads to be imposed on the caisson.

After completing the work, McKinney requested payment for an amount in excess of the base price, claiming that the contract provided for the additional amount for drilling into more rock than the base price contemplated. Upon refusal of payment, McKinney instituted this action under Alabama law against Collins and its surety, United States Fidelity and Guaranty Company (U.S.F. & G.). The nonjury verdict for McKinney reflected the unpaid sum in excess of the base price and statutory interest.

The background to this dispute begins in 1978 when the City of Decatur issued the initial plans and specifications for the construction project. The contract documents required prospective general contractors to submit lump sum bids covering all expenses. The general contractor assumed all risk as to the substances incurred in excavation to the required elevation of 523.03 plus one-foot per caisson for a rock socket.

To prepare its bid, The Collins Company solicited bids from subcontractors for various work including the caisson installation. Conveyed by phone to Collins, the McKinney bid of $110,960 expressly covered all earth excavation to elevation 523.03, one foot of rock excavation per caisson, and the required test holes. McKinney subsequently submitted a formal proposal which reiter-

ated the base price and the work it covered and called on the parties to negotiate unit prices for additional earth and rock excavation. Shortly thereafter, the president of Collins telephoned the McKinney district manager and obtained McKinney's unit prices which were $155 per linear foot, "plus or minus," for earth excavation and $575 per linear foot, "plus or minus," for rock excavation. The Collins and McKinney officials did not discuss the significance of unit pricing.

By this time, Collins had been awarded the contract for the construction project. Since McKinney's bid for the caisson work was the lowest submitted, Collins drafted a subcontract for the two companies. The agreement consisted largely of a standard printed form used by Collins for all subcontracting arrangements. The printed provisions noted that the contractor had the same rights against the subcontractor as the City had against the general contractor, and recited that the subcontractor was familiar with the provisions in the general contract affecting its operation. Collins adapted the printed form to the parties' specific situation by including a typewritten paragraph which described McKinney's duties and rights as follows:

> Install eight (8) 72″ diameter Drilled Caissons per Subcontractor's proposal of May 21, 1979 attached hereto and made a part of this agreement subject to the conditions and definitions contained herein.
>
> . . . .
>
> Final Billing to be adjusted as follows:
> a. More or less drilling and concrete fill in earth at $155.00 per lineal foot.
> b. More or less drilling and concrete fill in rock at $575.00 per lineal foot.
>
> . . . .

Neither party raised any questions about the subcontract prior to signing it in July 1979. Indeed, the dispute between McKinney and Collins did not surface until after McKinney had completely installed all the caissons.

Upon completing the job, McKinney submitted a request for final payment including a claim for $36,424.65 more than the base price. Relying primarily on its proposal which the subcontract incorporated and the typewritten provisions of the subcontract, McKinney arrived at the sum by asserting that the base price contemplated all earth excavation to elevation 523.03 but only one foot of rock excavation per caisson covering the rock sockets. According to McKinney, the actual drilling to elevation 523.03 consisted of both earth and rock excavation. It therefore applied the unit prices for excess rock excavation and a credit for less earth excavation to reach the sum requested. Relying largely on the printed provisions of the subcontract that refer to the general contract, Collins refused to pay the additional amount. It reasoned that the base price covered all excavation, whether earth or rock, to elevation 523.03 with the unit prices applying only if the elevation of any caisson was changed.

█ In a detailed opinion, the district court carefully reviewed the terms of the subcontract and the negotiations prior to the signing of the agreement. The court determined that the base price covered only one foot of rock excavation per caisson, not all drilling of rock to elevation 523.03. We cannot conclude that this finding of the parties' intent is clearly erroneous. *See Valley Cement Industries, Inc. v. Midco Equipment Co.,* 570 F.2d 1241, 1243 (5th Cir.1978).

Without repeating everything the district court said, we agree that the apparent ambiguity in the subcontract should be resolved in favor of McKinney. The general contract, incorporated into the subcontract, required a lump sum bid covering all work in drilling the caissons. The subcontract proposal, also incorporated into the subcontract, specified that the base price covered only one foot of drilling per caisson. In resolving this conflict, the district court correctly noted that specific, typewritten terms are usually deemed to reflect more accurately the parties' intent than general printed terms. *Western Oil Fields, Inc. v.*

*Pennzoil United, Inc.,* 421 F.2d 387, 389 (5th Cir.1970); *Bartlett & Co., Grain v. Merchants Co.,* 323 F.2d 501, 506 (5th Cir.1963). Here, the typewritten provision in the subcontract which incorporated the proposal directly supports McKinney's construction of the contract. Given the more specific and directly applicable language in the subcontract, the reliance of Collins and U.S.F. & G. on the terms of the general contract is misplaced. *See John W. Johnson, Inc. v. Basic Construction Co.,* 429 F.2d 764, 772 (D.C.Cir.1970) (even if fully incorporated into the subcontract, the general provisions of the prime contract do not overcome the specific provisions of the subcontract). McKinney and Collins could agree on a different pricing system in the subcontract.

Collins and U.S.F. & G. have presented numerous arguments in favor of their interpretation of the subcontract. Most of these have been addressed and properly rejected by the district court, so that it is not necessary to dispose of each contention in this opinion.

█ Appellants contended the language in the subcontract that the subcontractor's proposal was "subject to the conditions ... contained herein" made the proposal subservient to any conflicting terms in the printed provisions of the subcontract or in the general contract. Although the meaning of the phrase "subject to" is not free from doubt, and the contention presents some difficulty, we have decided the district court did not commit error in deciding that the parties intended the words to convey merely that the printed terms were also part of the contract. *See BBC, Inc. v. Canada Dry Delaware Valley Bottling Co.,* 393 F.Supp. 299, 303 (E.D.Pa.1975).

█ The few arguments by Collins and U.S.F. & G. concerning the payment provisions that the district court did not address in its opinion are baseless. Their claim, for example, that McKinney has in other projects submitted a base price covering all rock drilling to a specified elevation is not controlling. A subcontractor has the right to change its method of contracting in different projects. The argument that the

district court's interpretation is somehow unconscionable because it allows McKinney a great profit and Collins little or none is not borne out by the record. Collins is evidently an experienced contractor, not an unsophisticated consumer negotiating from a position of disadvantage.

■ In addition to disputing the district court's interpretation of the payment provisions of the contract, Collins and U.S.F. & G. raise several other points which do not warrant reversal. The printed provision stated that McKinney should not engage in any extra work except at Collins' instruction and limited the general contractor's liability for extra work to that which was expressly authorized. During the work, McKinney never requested any payment other than periodic installments of the base price. Appellants assert that the subcontractor cannot now recover more than the base amount. The agreement, however, provided that adjustments for "more or less" rock and earth drilling were to await final billing. Under such a contract, payments in excess of the base price for such drilling cannot be termed "extra" compensation for "extra" work. *See* 5 S. Williston, *A Treatise on the Law of Contracts* § 650, at 27 (3d ed. 1961) (the phrase "extra work" in a construction contract refers to work not contemplated by the contract).

■ The record does not support the contention that McKinney was aware of Collins' interpretation of the subcontract before beginning work but said nothing. The testimony merely reveals that McKinney and Collins never discussed the significance of unit pricing in the subcontract and that McKinney knew the general contract obligated Collins to install the caissons for a set amount regardless of the quantity of rock encountered. There is no evidence of "unclean hands."

■ The district court's finding as to the amount of rock excavated by McKinney is amply supported by the record. The court's definition of rock reflected testimony as to the customary meaning of the term in the caisson industry.

The motion of appellee McKinney for assessment of ten percent damages pursuant to Alabama law is granted, any dispute as to calculation to be settled by the district court.

AFFIRMED.