**JOHN F. HARKINS COMPANY, INC.**

**v.**

**The WALDINGER CORPORATION, Appellant.**

**No. 85–5695.**

United States Court of Appeals, Third Circuit.

Argued June 3, 1986.

Decided July 14, 1986.

Rehearing and Rehearing In Banc Denied Aug. 20, 1986.

James E. Stephenson (Argued), Brian G. Corgan, Smith, Currie & Hancock, Atlanta, Ga., Gary J. Lesneski, Archer & Greiner, Haddonfield, N.J., for appellant.

Carl H. Hanzelik (Argued), Thomas J. Foley, III, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., Patrick T. McGahn, Jr., Howard Drucks, McGahn, Friss & Miller, Atlantic City, N.J., for appellee.

Before ALDISERT, Chief Judge, and GARTH and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

ALDISERT, Chief Judge.

This appeal involves a dispute between a contractor and subcontractor. The district court held that a seemingly broad arbitration provision set forth in one clause of the subcontract was limited by another subcontract clause which incorporated a narrow arbitration clause contained in the primary or principal contract between the contractor and the project manager. The crucial issue is whether we characterize the function performed by the district court as contract interpretation or contract construction. We hold that the district court was interpreting language contained in the contracts, rather than deciding the legal relations between the parties, and therefore review its determination under the clearly erroneous standard. *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1052–53 (3d Cir.1984). We further conclude that the court's interpretation was not clearly erroneous and will therefore affirm.

### I.

John F. Harkins Co. was one of several primary contractors on the construction project for the Atlantic City Hilton Casino/Hotel. Harkins contracted with Hilton and the construction manager, Tishman Construction Co., to install the heating, ventilation, and air conditioning systems. Harkins subcontracted sheetmetal ductwork to Waldinger Corporation.

On November 9, 1984, Waldinger commenced an arbitration proceeding against Harkins before the American Arbitration Association, pursuant to what it considered a mandatory arbitration clause in the subcontract. Waldinger alleged that Harkins had "changed the conditions, sequence and schedule under which [Waldinger's] work was to be performed ...," resulting in excess costs to Waldinger, and requested an award of $6 million. App. at 34. Harkins disagreed that this was subject to arbitration. It then initiated this action in New

Jersey state court seeking to enjoin the arbitration. Harkins relied on a restrictive arbitration clause in the primary contract, which Harkins maintains was incorporated into its subcontract with Waldinger, a clause that limits arbitration to disputes over signed change orders. Waldinger then removed the state court action to federal district court.

The district court agreed with Harkins and held that this dispute was not covered by the arbitration clause. It concluded that "the proper interpretation of the disputed contractual provisions limits arbitrability to disputes over signed change orders...." App. at 60. The court determined that this was the primary contract arbitration limitation and that this limitation was incorporated into the subcontract. Because Waldinger's dispute did not involve a signed change order, the court ruled that it was not arbitrable. The court therefore denied Waldinger's motion for a stay of the district court action pending arbitration, and granted Harkins' motion to stay the arbitration. *Id.* Waldinger appeals. We have jurisdiction under 28 U.S.C. § 1292(a)(1). *J & R Sportswear & Co. v. Bobbie Brooks, Inc.*, 611 F.2d 29, 29 (3d Cir.1979); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 42 n. 7 (3d Cir.1978).

### II.

Before us Waldinger contends that the district court erred in construing the contract's arbitration language. Although terms of an injunction are normally reviewed for abuse of discretion, any determination that is a prerequisite to the issuance of an injunction, *i.e.*, the term of a contractual arbitration provision, is reviewed according to the standard applicable to that particular determination. *See Weiss v. York Hospital*, 745 F.2d 786, 829–30 (3d Cir.1984). Therefore, the crucial task before us is to decide the appropriate standard of review of the district court's examination of the contractual arbitration provisions.[1] Both Waldinger and Har-

---

1. "[F]ederal law applies in construing and enforcing an arbitration clause, even in those

kins cite *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049 (3d Cir.1984), for different standards of review on this issue. We agree that *Ram Construction* controls.

■ In *Ram Construction*, we distinguished between the standards of review for contract interpretation and contract construction. *Id.* at 1052–53. Contract interpretation is a question of fact, and review is according to the clearly erroneous standard. *Id.* at 1053. In contrast, contract construction is a question of law mandating plenary review. *Id.* Harkins argues that this case turns on interpreting the contract's terms in order to ascertain the intent of the parties. Waldinger contends that the case pivots on construing the contract according to law.

The distinction between interpretation and construction is not always easy. Professor Corbin described the distinction:

> By "interpretation of language" we determine what ideas that language induces in other persons. By "construction of the contract," as that term will be used here, we determine its legal operation— its effect upon the action of courts and administrative officials. If we make this distinction, then the construction of a contract starts with the interpretation of its language but does not end with it; while the process of interpretation stops wholly short of a determination of the legal relations of the parties. When a court gives a construction to the contract as that is affected by events subsequent to its making and not foreseen by the parties, it is departing very far from mere interpretation of their symbols of expression, although even then it may claim somewhat erroneously to be giving effect to the "intention" of the parties.

3 Corbin, Corbin on Contracts § 534 at 9 (1960) (footnotes omitted). Our opinion in *Ram Construction* further illuminates the distinction between contract interpretation and contract construction. In that case we

were faced with the question of whether the provisions of a contract for removal of one rock slide from a roadway covered a subsequent rock slide, or whether the actions of the parties had created a second contract. Speaking through Judge Weis, we said:

> [T]he decision that two separate agreements for slide removal existed was one of contract construction, not interpretation. As the surety states and the record confirms, there are no differences between the parties on the material terms of the Slide II agreement. The amount and type of work, compensation, time and method of carrying out the work, and other details are not contested. No question of interpretation is presented, only the construction of the agreement; that is whether Slide II is to be considered legally part of the December 8, 1982 contract or as a separate agreement.

749 F.2d at 1053. We also quoted Professor Patterson: " 'Construction, which may be usefully distinguished from interpretation, is a process by which legal consequences are made to follow from the terms of the contract and its more or less immediate context, and from a legal policy or policies that are applicable to the situation.' " *Id.* (quoting Patterson, *The Interpretation and Construction of Contracts*, 64 COLUM.L.REV. 833, 835 (1964)).

### III.

■ In the case at bar, the clash between the contracting parties centered on whether the parties intended that the liberal language of the subcontract's arbitration clause should apply, or whether they intended that the subcontract incorporate the primary contract's arbitration provision. Thus, when we use the *Ram Construction* -Professor Corbin-Professor Patterson nomenclature of "interpreting the contract," in this case this means ascertaining the intent of the parties as to what

cases in which jurisdiction is based on diversity." *Goodwin v. Elkins & Co.*, 730 F.2d 99, 108

(3d Cir.1984).

arbitration clause controlled. We have previously held that this is a question of fact, governed by the clearly erroneous standard. *Matter of Barclay Industries, Inc.*, 736 F.2d 75, 79 (3d Cir.1984) ("[I]nterpretation of an ambiguous contract ... is a question of the parties' intent, and thus a question of fact."); *Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75, 79 (3d Cir.1979) (" 'Discerning contractual intent' is a question of fact unless the provisions of a contract are 'wholly unambiguous.' " (quoting *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). We therefore conclude that the judicial task performed by the district court here was contract interpretation, i.e., determining the intent of the parties regarding arbitration. The court was required to find as a fact what the contracting parties intended. It had to divine this intent from the language of the contract documents and any extrinsic evidence that went to the issue of intent. Once we review the district court's language interpretation, the legal operation of that interpretation on review follows easily. The proper standard of review has to be whether the district court's findings—interpretation of the contract, that is, the intent of the parties as to the meaning of the contract's language—are clearly erroneous. We hold that its interpretation is not clearly erroneous.

## IV.

### A.

Harkins and Waldinger disagree over the interpretation of two provisions in the primary contract between Tishman, the construction manager, and Harkins, the heating, ventilation and air conditioning contractor, and two provisions in the subcontract between Harkins and Waldinger, the sheetmetal subcontractors. These provisions describe arbitration of disputes between parties to the two contracts. Section 17 of the Harkins/Waldinger subcontract provides:

17. All disputes, claims or questions arising hereunder shall be subject to ar-

bitration and shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of the A.I.A. A determination thereunder shall be final and binding upon the parties thereto. Pending determination, there shall be no work stoppage.

App. at 22. Waldinger contends that this section alone made all disputes arising under the subcontract subject to mandatory arbitration.

In response, Harkins contends that other provisions—one in the subcontract and two in Tishman/Harkins' primary or principal contract—limited the scope of arbitration. Harkins relies on Section 2 of the Harkins/Waldinger subcontract which provides:

2. Work performed by subcontractor shall be in strict accordance with CONTRACT DOCUMENTS applicable to the work to be performed and materials, articles and/or equipment to be furnished hereunder. SUBCONTRACTOR *shall be bound by all provisions of these documents and also by applicable provisions of the PRINCIPAL CONTRACT to* which the CONTRACTOR is bound, *and to the same extent....*

*Id.* (emphasis supplied). Harkins argues that the phrase "and to the same extent" in this section limited any mandatory arbitration provision in the subcontract to the scope of those arbitration provisions contained in the primary contract.

Arbitration provisions contained in the primary contract have a much narrower scope than that of the subcontract. Section 37 of the Tishman/Harkins primary contract refers to arbitration in general and limits arbitration to only those disputes that Clause 38 of the primary contract specifies as arbitrable:

37. In any case in which it is provided by the terms of this contract that any specific dispute or specific payment to be made shall be determined by arbitration, such arbitration shall be conducted in the City in which the Site is located in accordance with the Rules of the American

Arbitration Association, and judgment upon the award rendered by the Arbitrators may be entered in any Court having jurisdiction thereof.

*Id.* at 17. The only clause of the primary contract that permits arbitration is Section 38, which specifies arbitration for disputes over written change orders:

38. The owner, without invalidating this contract, may order extra work or make changes by altering, adding to or deducting from the work, the Contract Price to be adjusted accordingly. The Contractor shall not make any alterations or omit anything, or perform additional or extra work, except upon written order signed by the Owner....

....

In case of disagreement as to the amount to be paid or allowed, the Contractor shall promptly comply with the order and the amount shall be determined by arbitration as herein provided.

*Id.* at 17–18.

**B.**

After considering these provisions and other evidence relating to the parties' intent, the district court determined that:

The only real issue for the court to resolve is whether Waldinger can submit issues for arbitration under the subcontract when Harkins could not seek arbitration of the same issues under the primary contract, given the fact that section 2 of the subcontract binds Waldinger, the subcontractor, *to the same extent* to which Harkins is bound under the primary contract. We believe that the correct interpretation bars Waldinger from arbitrating disputes under the subcontract if Harkins could not do the same under the primary contract.

*Id.* at 58. In addition to its examination of the contracts, the district court relied on an affidavit of John F. Harkins, President of Harkins Co., as evidence of the parties' intent:

The provision of paragraph 2 of Harkins' form subcontract that "Subcontractor shall be bound by all provisions of these

documents and also by applicable provisions of the Principal Contract to which Contractor is bound, and to the same extent" is intended, *inter alia,* to assure that subcontractors have no greater rights and remedies against Harkins under the subcontract form than Harkins has against owners or general contractors under principal contracts.

*Id.* at 44. This, of course, is strong evidence of the contracting parties' intent. Significantly, there was no rebuttal to this evidence.

In addition, the district court also deemed relevant an amendment to the subcontract prepared by Waldinger:

3. Paragraph 2, Terms and Conditions of Subcontract is amended as follows:

Add the following sentence at the end of the paragraph: "Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which Contractor has against Tishman, the Owner under the Contract Documents."

*Id.* at 31. The district court believed that this "indicates that Waldinger was well aware that the subcontract's standard form allotted more rights to Harkins, the contractor, than to itself or to any subcontractor. The fact that Waldinger requested and obtained the amendment suggests that it contemplated the types of problems that might arise because all provisions of the primary contract were to be incorporated by reference into the subcontract." *Id.* at 59.

**V.**

In *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court recently explained the highly circumscribed nature of appellate review of findings of fact:

If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are

two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* at ——, 105 S.Ct. at 1512. Accordingly, we do not have the authority to reverse the district court's finding simply because we may have reached another finding as to intent. We are required to examine the entire record—the contractual provisions as well as other evidence that was before the district court. Furthermore, our review is no less circumscribed, "even when the district court's findings do not rest on credibility determinations, but are based instead on ... documentary evidence or inferences from other facts." *Id.*

■ Section 2 of the Harkins/Waldinger subcontract can be read to limit the scope of the subcontract's arbitration provision to the narrower provisions of the Tishman/Harkins primary contract. The Harkins' affidavit and the amendment proposed by Waldinger further support the district court's finding of what the parties intended. We therefore hold that the district court's interpretation of the contractual language was not clearly erroneous.

### VI.

Waldinger challenges the district court's judgment on several other grounds, all of which we find unpersuasive. First, it relies on several cases where courts have held that an incorporation clause in a subcontract does not limit the dispute resolution method specified in the subcontract. Facts in these cases, however, differ from the matter at bar. In *John W. Johnson, Inc. v. Basic Construction Co.*, 429 F.2d 764, 773 (D.C.Cir.1970), a clause in the primary contract stated that the contractor would bind subcontractors to the terms and provisions of the primary contract which were "applicable to the work." Here the incor-

poration clause was not limited to work. This factual distinction also applies to *McKinney Drilling Co. v. Collins Co.*, 517 F.Supp. 320, 328 n. 7 (N.D.Ala.1981), *affirmed,* 701 F.2d 132 (11th Cir.1983), another case upon which appellant relies heavily. Moreover, in *McKinney Drilling Co.*, the court relied upon expert testimony stating that it was industry custom that the terms of the contract at issue did not apply to the subcontract. *Id.* at 327. Here, the district court relied upon Harkins' affidavit where he stated that the opposite was true. Also, we note that in *Johnson* and *McKinney* the courts of appeals were not limited to the clearly erroneous standard of review, as we are required by *Ram Construction,* but apparently exercised plenary review.

■ Waldinger also argues that because of the strong federal interest in promoting arbitration, a court should favor a finding of arbitrability.[2] We are uncertain that arbitration is afforded such a stated preference beyond the environment of labor arbitration. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960) ("In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here."); *Goodwin v. Elkins & Co.*, 730 F.2d 99, 108 (3d Cir.1984) ("Arbitrability ... is purely a matter of contract."). *But see Moses H. Cone v. Mercury Construction Co.*, 460 U.S. 1, 25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is

---

**2.** Additionally, Waldinger contends that because Harkins drafted the subcontract, any ambiguity in the contract should be construed against it. *See, e.g., Zulla Steel, Inc. v. O. & M. Gregos, Inc.*, 174 N.J.Super. 124, 415 A.2d 1183 (App.Div. 1980). In that case the court ruled that an ambiguous payment clause in a contract between a contractor and subcontractor should be

construed against the contractor because "the contract was on [the contractor's] form and the payment provision was a portion of its printed contract." *Id.*, 415 A.2d at 1187. However, this is a rule of contract construction, rather than contract interpretation, and as such should not affect the district court's decision on the underlying factual issue of interpretation.

the construction of the contract language itself or an allegation of waiver...."). We do not believe that the rule stated in *Cone* applies here where in interpreting the language of the contracts the district court was performing a fact finding function.

## VII.

We will not say that the district court's interpretation of the contract is clearly erroneous. The district court's decision to enjoin the arbitration proceedings was, therefore, not an abuse of its discretion.

The judgment of the district court will be affirmed.

GARTH, Circuit Judge, dissenting:

This case involves a dispute over the reach of an arbitration clause in a construction subcontract in the construction of the Atlantic City Hilton Hotel/Casino ("the Project"). Because I disagree with the majority both as to the applicable standard of review and as to the construction of the subcontract, I dissent.

## I.

The majority attempts to characterize the dispute in this case as one of contract *interpretation* rather than contract *construction.* This threshold characterization is a critical one because questions of construction are questions of law subject to plenary review by this court, whereas questions of interpretation are questions of fact, and must be reviewed under a "clearly erroneous" standard. *Ram Construction Co. v. American States Insurance Co.,* 749 F.2d 1049 (3d Cir.1984). In contrast with the majority, I believe that the dispute in this case is one of contract construction, not contract interpretation.

In *Ram Construction,* we defined "construction" of a contract as the process of determining its legal effect. *Id.* at 1053 (citing 3 Corbin on Contracts § 534). Interpretation, in contrast, is a narrower process of ascertaining the meaning of the particular words used and their applicability to a specific factual situation. The distinction is clearly stated by Williston: "The word 'interpretation' is used with respect to language itself; it is the process of applying the legal standard to expressions found in the agreement in order to determine their meaning. 'Construction,' on the other hand, is used to determine, not the sense of the words or symbols, but the legal meaning of the entire contract; the word is rightly used wherever the import of the writing is made to depend upon a special sense imposed by law." Williston on Contracts § 602, at 320 (3d ed. 1961). *See also* Patterson, *The Interpretation and Construction of Contracts,* 64 Colum.L.Rev. 833, 833–36 (1964).

In *Ram Construction,* this court decided that the issue of whether two agreements were or were not part of a single contract was a question of construction, not of interpretation. In this case, as in *Ram Construction,* we are required to construe two contracts: the Principal Contract entered into by Harkins and Tishman, as agent for the owner, Hilton ("the Principal Contract"); and the Subcontract entered into by Harkins and Waldinger ("the Subcontract"). Harkins argues that the Subcontract is governed by the arbitration clause in the Principal Contract, because the Principal Contract is incorporated by reference into the Subcontract. Waldinger, in contrast, argues that the specific arbitration clause of the Subcontract overrides the general provision incorporating the Principal Contract into the Subcontract. This dispute, like that in *Ram Construction,* deals with "the legal meaning of the entire contract," not the meaning of particular words. It therefore presents a question of construction, as distinct from a question of interpretation, and is subject to plenary review by this court. It is not, in my opinion, a question of fact to be reviewed under the "clearly erroneous" standard as the majority holds.[1]

---

**1.** The 1985 amendment to Federal Rule of Civil Procedure 52(a), which provides that a lower court's factual findings, "whether based on oral or documentary evidence, shall not be set aside

## II.

Even if I were to agree with the majority, which I do not, that this case should be reviewed under the "clearly erroneous" standard, I believe that even that standard would require reversal of the judgment below. *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) ("clearly erroneous" standard requires reversal where court is "left with the definite and firm conviction that a mistake has been committed"). Both the principle that a contract should be construed so as to reconcile apparent inconsistencies and give meaning to all its terms, and the principle that specific language in a contract governs over more general language, dictate that the district court erred and that we reverse.

## A.

The dispute in this case concerns the question of how to construe the arbitration clause of the Subcontract between Harkins and Waldinger in light of that Subcontract's incorporation of the Principal Contract between Harkins and Tishman. At the outset, it should be noted that the Federal Arbitration Act reflects a strong federal policy favoring arbitration. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see also Stateside Machinery Co. v. Alperin,* 591 F.2d 234 (3d Cir.1979). The Supreme Court, in *Cone,* was referring to the arbitration clause of a *construction* contract. Contrary to the assertion of the majority, therefore, there can be no question that federal policy embodied in the Arbitration Act, as interpreted by the United States

Supreme Court, favors the arbitration of commercial as well as labor disputes. However, even absent the dictates of *Cone* and the congressional policies attending the Arbitration Act, basic principles of contract construction mandate reversal here.

The Subcontract between Harkins, the prime contractor, and Waldinger, the subcontractor, was based on a form subcontract provided by Harkins, and modified by three attachments. Paragraph 17 of the form subcontract provides as follows:

> All disputes, claims or questions arising hereunder shall be subject to arbitration and shall be submitted to arbitration in accordance with the provisions then obtaining of the Standard Form Arbitration Procedure of the A.I.A. A determination thereunder shall be final and binding upon the parties thereto. Pending determination, there shall be no work stoppage.

App. 22.

The Subcontract also incorporated the Principal Contract by reference in two places. The front page of the Subcontract provides:

> Enter our order for the following materials, equipment and/or services to be furnished and performed in accordance with the General Conditions, Special Conditions, Plans, Specifications, Drawings, and Addenda, (hereinafter called CONTRACT DOCUMENTS), prepared by John Carl Warnecke & Assocs. & David Jacobson assoc., Arch., all of which form a part of the Contract between JOHN F. HARKINS CO., INC. and Tishman Construction Company, (hereinafter referred to as PRINCIPAL CONTRACT) and hereby becomes a part of this Contract as if set forth at length attached hereto.

App. 21.

The second reference to the Principal Contract is in paragraph 2 of the form Subcontract, which provides:

> Work performed by SUBCONTRACTOR shall be in strict accordance with

unless clearly erroneous," is not to the contrary, for the amendment refers to questions of interpretation, not to questions of construction.

CONTRACT DOCUMENTS applicable to the work to be performed and materials, articles and/or equipment to be furnished hereunder. *SUBCONTRACTOR shall be bound by all provisions of these documents and also by applicable provisions of the PRINCIPAL CONTRACT to which the CONTRACTOR is bound, and to the same extent.* Where specific work as set forth in the CONTRACT DOCUMENTS is not described in this order, SUBCONTRACTOR shall perform all work normally construed to come within the scope of his activities, as required of the CONTRACTOR under the PRINCIPAL CONTRACT. All work shall be performed to the complete satisfaction of the CONTRACTOR, the Architect and Owner.

App. 22 (emphasis added).

Harkins contends, and the majority agrees, that these incorporating provisions, and particularly the emphasized portion of paragraph 2, override the specific arbitration clause in paragraph 17 of the Subcontract, making the arbitration provisions of the Principal Contract applicable here. The Principal Contract's arbitration provisions, contained in paragraphs 37 and 38 of that Contract, provide for arbitration only in the specific instance of a disagreement over the amount to be paid under a signed written change order, and are therefore not applicable to the disputes which Waldinger seeks to arbitrate here.[2]

### B.

It is a general principle of contract law that, where two provisions of a contract are inconsistent, general language must yield to more specific language. *Affiliated Food Distributors, Inc. v. Local Union No. 229*, 483 F.2d 418 (3d Cir.1973); *see also* Corbin on Contracts, § 547; Restatement 2d Contracts § 203.

The language of paragraph 17 of the Subcontract is clear and unequivocal: *"All disputes, claims or questions arising hereunder shall be subject to arbitration...."* App. 22 (emphasis added). In contrast, the language from paragraph 2 of the Subcontract pointed to by Harkins, which allegedly overrides this clause, is general and vague, merely stating that Waldinger, the subcontractor, is bound by the Principal Contract to the same extent as is Harkins, the prime contractor. Even if this language of the Principal Contract were inconsistent with the Subcontract, the provisions of the latter would control.

This principle of contract law has been applied to situations in the construction industry where a subcontract incorporated a principle contract. Thus, the Fifth Circuit has held that, "while a reference in a subcontract to the provisions, plans and specifications of a general contract imports them into the subcontract where not inconsistent with its terms, it is quite well settled that such a reference is not effective beyond this, and that if the subcontract contains words of definite limitation, they will be given effect and the reference limited accordingly." *Perry v. United States*, 146 F.2d 398, 400 (5th Cir.1945).

Similarly, the D.C. Circuit has held, relying on the general principles of contract

---

**2.** Paragraphs 37 and 38 of the Principal Contract provide, in relevant part, as follows:

"37. In any case in which it is provided by the terms of this contract that any specific dispute or specific payments to be made shall be determined by arbitration, such arbitration shall be conducted in the City in which the Site is located in accordance with Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any Court having jurisdiction thereof.

38. The Owner, without invalidating this contract, may order extra work or make changes by altering, adding to or deducting from the work, the contract price to be adjusted accordingly. The contractor shall not make any alterations or omit anything, or perform additional or extra work, *except upon written order signed by the Owner....* No request for payment for extra work will be honored unless accompanied by such written order....

   \*    \*    \*    \*    \*    \*

*In the case of disagreement as to the amount to be paid or allowed,* the Contractor shall promptly comply with the order and the amount shall be determined by arbitration as herein provided."

App. 10–11 (emphasis added).

law, that, "even if the prime contract were fully incorporated into the subcontract, its general provisions would not overcome the specific provisions of the subcontract." *John W. Johnson, Inc. v. Basic Construction Co.,* 429 F.2d 764, 772 (D.C.Cir.1970). The D.C. Circuit rejected the prime contractor's argument that, "because the subcontract fully integrated the terms and conditions of the prime contract [it] operated to bind [the subcontractor] to the same terms, including the Disputes Clause of the prime contract." *Id.*

In a case virtually on all fours with the instant one, the District Court for the Northern District of Alabama construed a clause in a subcontract which provided that "the contractor shall have the same rights and privileges against the subcontractor as the owner has against the contractor." *McKinney Drilling Co. v. Collins Co.,* 517 F.Supp. 320, 325 (N.D.Ala.1981), *affirmed,* 701 F.2d 132 (11th Cir.1983). The defendants contended that provisions of the specifications contained in the prime contract controlled over the terms of the subcontract. The court stated,

> [D]efendants' contention ... is legally unsound. Numerous cases have held that a subcontractor is free to contract in any manner that it desires; and if the specific provisions of the subcontract conflict with the plans and specifications, or with the general contract between the prime contractor and the owner (all of which are incorporated into the subcon-

tract), the terms of the subcontract prevail.
*Id.* at 327–28.[3]

According to Harkins, the incorporation of the Principal Contract in the instant case was intended to limit the remedies available to the subcontractor, Waldinger, so that Waldinger would not have greater rights as against Harkins than Harkins had as against Hilton. In this manner, Harkins contends, it ensures that it can "pass through" to the owner any claim made against it by the subcontractor. Harkins maintains that the meaning of such a "conduit clause" in restricting the remedies available to the subcontractor is well-known to persons with experience in the construction industry.

The cases cited above dealing with construction industry contracts refute this argument. *See also United States v. Cleveland Electric Co.,* 373 F.2d 585 (4th Cir. 1967); *Central Steel Erection Co. v. Will,* 304 F.2d 548 (9th Cir.1962). They suggest that there is no necessary symmetry between a principal contract and a subcontract. The prime contractor's contract with the subcontractor must be read on its own terms, and there is no reason why these terms may not enlarge the remedies mutually available to the subcontractor and the prime contractor beyond those that are available to the prime contractor in his relationship to the owner. Whatever subjective intent may have been in Harkins' mind at the time it signed the Subcontract,[4]

---

**3.** The majority's attempt to distinguish *McKinney Drilling* and *Basic Construction* from the instant case does not withstand analysis. Contrary to the assertion of the majority, maj.op. at 662, the language of the subcontract in *McKinney Drilling* is virtually identical to that in the instant case. *McKinney Drilling,* 517 F.Supp. at 320. But more important, the holdings in these cases do not rest upon the precise language of the incorporating clause, but on the principle that a specific clause in the subcontract overrides general language of incorporation.

**4.** The affidavit of Harkins' president, John F. Harkins, which merely recites *Harkins'* interpretation of paragraph 2, is irrelevant to the dispute here. The Subcontract at issue here is clear on its face, and therefore Harkins' intent, to the extent that it contradicts the express lan-

guage of the contract, should be immaterial and inadmissible under the parol evidence rule. *See, e.g.,* Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009–10 (3d Cir. 1980).

Harkins' construction of the contract might conceivably carry some weight if this construction were accepted in the industry, or if there were any evidence that Waldinger shared this construction. Restatement 2d, Contracts §§ 201(2), 202(5). The first possibility, that this is the accepted construction of such a clause in industry circles, is belied by the cases cited above.

Nor is there any evidence that Waldinger knew of Harkins' construction of paragraph 2. The majority, quoting the district court, suggests that Waldinger's proposal to add paragraph 3 of

that intent cannot override the explicit language of the Subcontract. The mere insertion of a so-called "conduit clause" cannot operate magically to protect the contractor from meeting his obligations to the subcontractor.

### C.

A second principle of contract construction leads to the same result: a contract should be interpreted so as to give meaning to all its terms. Restatement 2d, Contracts § 203(a); *See Schultz v. Onan Corp.*, 681 F.2d 177 (3d Cir.1982). Under the construction of the subcontract espoused by the majority, the all-disputes arbitration clause of paragraph 17 becomes mere surplusage, for, in the view of the majority, it is overridden by the arbitration clauses of the Principal Contract.

In my opinion, the incorporating language of paragraph 2 of the Subcontract can be read so as to be consistent with paragraph 17 of the Subcontract, thereby giving full effect to both paragraphs. The majority would read paragraph 2 to mean that Waldinger, the subcontractor, is bound by the Principal Contract *only* to the extent that the prime contractor is bound. It is equally plausible, however, to read this language as meaning that the subcontractor is bound *at least* to the same extent as the prime contractor. If the latter construction is correct, then there is no inconsistency between the arbitration clauses of the Prime Contract and the Subcontract: Paragraph 17 of the Subcontract merely imposes an *additional* requirement to arbitrate on Harkins that, while it goes beyond

the arbitration requirement in the Principal Contract, in no way contradicts the Principal Contract.

A second plausible construction of the language of paragraph 2, which also would render it consistent with paragraph 17, would hold that the incorporating language of paragraph 2, which binds the subcontractor "to the same extent" as the prime contractor, refers only to the terms and conditions of the Principal Contract that deal with the scope, character, and manner of performance of the work itself, and not to those that deal with the settlement of disputes. In fact, a number of courts construing similar language have taken this position. *John W. Johnson, Inc. v. Basic Construction Co.*, 429 F.2d 764, 775–776; *United States for Use of B's Co. v. Cleveland Electric Co.*, 373 F.2d 585, 588 (4th Cir.1967); *McKinney Drilling Co. v. The Collins Co.*, 517 F.Supp. 320, 328 (N.D.Ala. 1981).

However, we need not construe paragraphs 2 and 17 to be consistent with each other. Even if the general incorporating language of paragraph 2 *were* inconsistent with the specific arbitration provision of paragraph 17, the principle of giving a reasonable and effective meaning to all the terms of the contract would require that the all-disputes arbitration clause of paragraph 17 be given effect. Paragraph 17 must override paragraph 2 because only in this manner can meaning be given to both paragraphs. In contrast, paragraph 2 cannot be construed as the majority does without voiding paragraph 17 of all meaning.[5]

Attachment C to the subcontract indicates that Waldinger was aware that paragraph 2 limited Waldinger's rights to those specified in the principal contract. Maj.op. at 661. Paragraph 3 of Attachment C adds the following to paragraph 2 of the Subcontract: "Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which Contractor has against Tishman, the Owner under the Contract Documents." App. 31.

This language is obviously designed merely to ensure that Waldinger not be *denied* any remedy that might be available to Harkins under the Principal Contract. It does not even remotely suggest that Waldinger was aware that its remedies vis-a-vis Harkins were *limited* to those

available to Harkins vis-a-vis Tishman. In fact, as Waldinger points out, although Attachment C is a paragraph by paragraph amendment of the terms of the Subcontract, it contains no reference to arbitration, nor does it amend the "all-disputes" provision of paragraph 17 in any way.

5. Harkins would have us believe that paragraph 17 is not surplusage because it grants Harkins the right to initiate arbitration on any issue against Waldinger, even though it grants no reciprocal right to Waldinger. However, there is nothing in either the Principal Contract or the Subcontract to support the view that the Subcontract was intended to give Harkins greater rights than Waldinger to initiate arbitration.

## III.

The fact that the Subcontract between Harkins and Waldinger specifically provides for arbitration of all disputes should suffice to dispose of this case, particularly in view of the policy in favor of arbitration and the general rule of contract law that a contract is to be construed most strictly against the drafter (in this case Harkins). Both the principles of contract law and the cases dealing with the construction industry clearly provide that a specific provision of a subcontract is valid, even though it conflicts with a provision of a principal contract which has been incorporated by reference into the subcontract, and even though the provision of the subcontract grants different rights and remedies to the subcontractor than those which the prime contractor may have available to it in relation to the project's owner.[6]

For these reasons, I dissent and would reverse the judgment below.

The Principal Contract does not give asymmetrical rights to Tishman as against Harkins, and it is hard to see how the same contract could, by virtue of being incorporated into the Subcontract, be construed to give such asymmetrical rights to Harkins as against Waldinger. If arbitration is indeed limited to the subjects described in the Principal Contract, then this limitation applies to all parties, and not just to Waldinger.

**6.** The two cases cited by Harkins, *Industrial Indemnity Co. v. Wick Construction Co.,* 680 P.2d 1100 (Alaska 1984), and *Starr Electric Co. v. Basic Construction Co.,* 586 F.Supp. 964 (M.D. N.C.1982), are not to the contrary, because in those cases no inconsistency was found between the provisions of the subcontract and the provision of the principal contract that was assertedly applicable to the relationship between the prime contractor and the subcontractor.