174 N.J. Super. 124 (1980)
415 A.2d 1183
ZULLA STEEL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
A & M GREGOS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 28, 1980.
Decided May 13, 1980.
*127 Before Judges BISCHOFF, BOTTER and MORTON I. GREENBERG.
Giordano, Halleran & Crahay, attorneys for appellant (Martin J. Arbus on the brief).
*128 Himelman, Siegfried, Schneider & Freiberger, attorneys for respondent (William Himelman on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
Plaintiff brought this action against defendant alleging that defendant had breached a contract by not making progress payments when due on a subcontract for structural work being performed by plaintiff for defendant. The prime contract was for the expansion of the Elizabeth postoffice. Defendant was the prime contractor. Defendant counterclaimed for breach of contract, asserting that plaintiff had improperly performed under the contract. The case was tried without a jury. The trial judge in an oral opinion found in favor of plaintiff on the complaint and awarded damages in the amount of $39,075. The counterclaim was dismissed, the judge finding that the proofs supporting it were "totally inadequate." Defendant appeals.
The facts concerning execution of the contract are not disputed. Defendant was the prime contractor on the Elizabeth postoffice expansion project. On June 16, 1975 plaintiff and defendant entered into a written subcontract for structural steel and related work on the project. The agreed price was $340,000, to be paid in installments. Specifically, the contract provided that payment would be made as follows:
90% of the value of the work completed and approved by Owner and/or the General Contractor, during the progress of the work, which shall be paid on or about the fifteenth day of each succeeding month. The retained percentage shall be paid thirty days after the completion and acceptance of the captioned job and receipt of final payment thereof by the General Contractor.
Defendant's contract with the postoffice provided for installment payments. It was required to submit periodic applications and certificates for payment. These applications included a "Trade Payment Tabulation" showing a description of the work performed for the postoffice. The tabulation reflected the *129 scheduled value of the work for each item as agreed between defendant and the postoffice, the work completed on each item shown on previous applications for payment, the additional work done reflected on the current application, the total of all work completed expressed both in terms of money and percentages for each item, and the money amount left to be earned on completion of each item. The scheduled value of plaintiff's work as between defendant and the postoffice reflected in the tabulation was $370,000.
The evidence showed that the following procedure was adopted for defendant to obtain payment from the postoffice. There was a monthly job meeting of a postoffice representative, a construction manager, an architect's representative and defendant's project manager. These four persons would review the items on the tabulation and agree on what work had been completed. This included work performed by plaintiff. After agreement was reached defendant would prepare the formal application and certificate for payment with the tabulation and submit them to the postoffice for payment.
It is not disputed that plaintiff started performing under the contract in the summer of 1975. It continued working into 1976 but at that time left the job. By telegram from defendant on March 23, 1976 plaintiff was told to return to the job or its contract would be terminated. Plaintiff did not return. Plaintiff was paid $260,712 on the contract price and an undisputed extra of $1,480. It is not disputed that plaintiff did not compete the contract.
The record makes it clear that from defendant's own submissions to the postoffice plaintiff was not paid the progress payments in accordance with its contract. Defendant's first tabulation and certificate dated August 14, 1975 shows nothing due for plaintiff's work. Certificate two, dated September 5, 1975, shows $10,000 for plaintiff's work. Certificate three, dated October 2, 1975, shows $212,195 for plaintiff's work after *130 the previous $10,000 application. Certificate three was erroneous because certificate four, dated November 4, 1975, deleted the $212,195 but provided for a new figure of $120,000 on that application so that with the original $10,000 the work valued to the postoffice to date had been $130,000. Certificate five, dated November 14, 1975, reflected $174,000 on that application for plaintiff's work, so that plaintiff had completed $304,000 work by no later than November 14, 1975. This figure was 82.16% of $370,000. Thus, since plaintiff was to be paid $340,000 on the contract, plaintiff should have been paid $279,344, which is 86.16% of $340,000, by on or about December 15, 1975 for work done by November 14, 1975, less retainage of 10%, or $251,410. In fact, by December 15, 1975 plaintiff was paid $118,792 against invoices of $276,508. Plaintiff was next paid $133,352 on January 9, 1976. Certificate six, dated November 25, 1979, showed that plaintiff had done $10,500 more work. Additional money was due plaintiff by December 15, 1975 for this work as well. Certificate seven, dated January 6, 1976, showed that plaintiff had performed $7,000 more work. Finally certificate eight, dated March 5, 1976, showed plaintiff had done $2,700 more work. As noted, by December 15, 1975 plaintiff had been paid $118,792. Plaintiff received additional payments of $133,352 on January 9, 1976 and $8,568 on February 24, 1976 and thus was paid $260,712 overall.
The trial judge held that defendant, by reason of its delinquencies in payments, had breached the contract with plaintiff, and we agree. The submissions by defendant to the postoffice require this holding. We do note, however, that the trial judge related defendant's obligation to pay plaintiff to the rendering of invoices by plaintiff to defendant. We do not agree with that analysis because payment was required only after approval by the postoffice and/or defendant, and then on or about the fifteenth day of the following month following approval. But nevertheless we concur in the result reached that defendant breached the contract. In fact, defendant has never *131 paid plaintiff for the full amount of work performed by plaintiff by November 14, 1975 and has been materially in default since December 15, 1975 or thereabouts. Plaintiff presented substantial credible evidence that defendant's failure to pay plaintiff meant that plaintiff could not pay its subcontractor and thus could not complete its contract with defendant. The trial judge accepted this testimony and so do we. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483 484 (1974). Under the circumstances there can be no question but that defendant's breach of contract was material. Defendant's failure to pay was not justified by any alleged shortcomings in plaintiff's performance. The trial judge found that the assertion by defendant that plaintiff improperly performed had not been substantiated. We accept and affirm these findings which resulted in the dismissal of the counterclaim. Ibid.; R. 2:11 3(e)(1)(A).
Since defendant breached its contract we must determine whether the breach justified plaintiff in abandoning the project. It is true that it has been held that where a contract is entire so that the payment of the consideration in installments is not for a particular performance, nonpayment does not justify the contractor in failing to complete the work. Magliaro v. Modern Homes, Inc., 115 N.J.L. 151, 155 (E. & A. 1935); McGraw v. Johnson, 42 N.J. Super. 267 (App. Div. 1956). But there is contrary authority. Watson v. Auburn Iron Works, Inc., 23 Ill. App.3d 265, 318 N.E.2d 508 (1974). Certainly the current approach in contract construction is to honor the expressed or presumed intention of the parties. Fidelity Land Develop. Corp. v. Rieder & Sons Bldg. & Develop. Co., 151 N.J. Super. 502 (App. Div. 1977). We find it impossible to believe that in a major construction project the parties would expect that a subcontractor would be obliged to continue working even though there were material delays in payment to it. Ordinarily the parties would expect that the subcontractor would be using the installment payments to satisfy its own expenses. While we do not *132 suggest that every delay in payment will justify a contractor in terminating performance under an installment contract, here there was a substantial underpayment for a prolonged period of time. In these circumstances we hold that plaintiff was justified in discontinuing performance. See 3A, Corbin, Contracts, § 692 at 271 (1960). We also point out that New Jersey has a public policy of protecting subcontractors reflected in our Mechanics Lien Act. N.J.S.A. 2A:44 64 et seq. Though we make no finding that the act was applicable to the Elizabeth postoffice project, certainly we are entitled to consider the policy it reflects. It would not be consistent with such a policy to hold that the common law did not permit plaintiff to abandon the project in the circumstances confronting it. Thus we hold that here plaintiff's covenant to perform was dependent on defendant's performance of its covenant to pay for approved work in accordance with the agreement and that defendant's breach of contract justified plaintiff in terminating performance.
This ruling is in accord with other cases finding covenants to be dependent. In Marini v. Ireland, 56 N.J. 130 (1970), the Supreme Court in dealing with a lease held that contrary to historical treatment: "... presently we recognize that covenants are dependent or independent according to the intention of the parties and the good sense of the case." Id. at 145. See, also, Berzito v. Gambino, 63 N.J. 460 (1973). We feel constrained to follow this approach by the Supreme Court rather than older contrary authorities.
Defendant's argument that the trial judge improperly rejected evidence of a trade custom that permitted it to defer paying plaintiff until the postoffice paid defendant lacks merit. Whatever may have been the trade custom, the contract between the plaintiff and defendant was clear and unambiguous. Midland Carpet Corp. v. Franklin Associated Properties, 90 N.J. Super. 42 (App. Div. 1966). If we read into the contract a provision that defendant could defer payment until it was paid, we would improperly be writing a new contract for the parties. *133 Klacik v. Kovacs, 111 N.J. Super. 307 (App. Div. 1970), certif. den. 57 N.J. 237 (1970). Further, since the payment provision did defer payment of the retained percentage to plaintiff until defendant received final payment from the postoffice, an intent that such deferment apply to the installments is plainly negated. Additionally, we note the contract was on defendant's form and the payment provision was a portion of its printed contract. Thus it should be construed against defendant. Summer v. Fabregas, 52 N.J. Super. 399 (App. Div. 1958).
The trial judge also properly rejected an inquiry by defendant into when plaintiff paid its bills, for there was no showing that defendant would have made payment to plaintiff or tendered it in a timely manner subject to plaintiff's producing releases from its suppliers and subcontractors. Had defendant tendered what it owed, arrangements could have been made to satisfy plaintiff's creditors. Defendant argues that plaintiff waived any breach of contract by accepting late payments. This position is clearly without merit. R. 2:11 3(e)(1)(E). Defendant also urges that certain evidential rulings by the judge were erroneous. However, these rulings require no discussion as we are satisfied they could not have produced an unjust result. R. 2:10-2. Under all the circumstances we have therefore concluded that the trial judge correctly held that defendant breached its contract with plaintiff and that plaintiff was entitled to recover such damages as it could show. We also hold that since defendant breached the contract, plaintiff's failure to prove that defendant has not received final payment should not bar this action. Cf. Woodhouse v. Woodhouse, 15 N.J. 550 (1954).
We disagree somewhat, however, with the trial judge's calculation of damages. The judge made computations by starting with the amount of plaintiff's invoices adjusted to remove a double billing. He then subtracted from this figure certain additional adjustments for moneys assigned to a subcontractor of plaintiff and other moneys for work not completed. Ultimately the judge concluded that plaintiff had earned $299,787 *134 and had been paid $260,712. Thus plaintiff received a judgment for the difference, $39,075. The judge noted that the earned figure of $299,787 was 87.7% of the contract price of $341,480 as modified by the agreed extra. He further pointed out that according to defendant's certificate eight, plaintiff had performed 87.62% of its work.
Our independent review of the record convinces us that the computations of the trial judge were correct in terms of percentage of work completed and that damages should have been computed on that basis. Certificate eight showed plaintiff completed $324,200 work on the original amount of $370,000 allocated to plaintiff's work on defendant's contract with the postoffice. That figure is 87.6216% of $370,000. But since plaintiff's contract was based on $340,000, plaintiff earned $297,913.44 on the contract plus the extra of $1,480, for a total of $299,393.44.
We believe that the percentage approach is correct because the measure of damages in this case where plaintiff was stopped from completing the contract is "such a proportion of the entire price as the fair cost of that work bears to the fair cost of the whole work, and, in respect to the work not performed, such profits as he would have realized as a result of the complete performance." Goldman v. Shapiro, 16 N.J. Super. 324, 327 (App. Div. 1951). Here there was no showing of lost profits. We hold that plaintiff earned $299,393.44 rather than $299,787 as computed by the trial judge. The difference of $393.56 should be subtracted from the judgment entered by the trial court. Accordingly, the final judgment entered on April 30, 1979 is modified by being reduced to $38,681.44 and, as modified, is affirmed.