SEAL TITE CORPORATION, a limited
partnership, Plaintiff,

v.

EHRET, INC., Defendant.

Civ. A. No. 82–1723.

United States District Court,
D. New Jersey.

July 6, 1984.

Kushinsky, Gans & Chaplick by Burton
T. Gans, Toms River, N.J., for plaintiff.

Shackleton, Hazeltine & Buczynski by
Richard J. Shackleton, Ship Bottom, N.J.,
for defendant.

CLARKSON S. FISHER, Chief Judge.

This action concerns a contract dispute
between plaintiff, Seal Tite Corporation,
and defendant, Ehret, Inc., which arises
from the construction of a shopping center
in Toms River, New Jersey. Ehret was the
general contractor for the project and, by
contract dated January 15, 1981, hired Seal
Tite as subcontractor to do a considerable
portion of the site work. It is undisputed
that Ehret is liable to pay the sum cf
$101,767 to Seal Tite. The sole issue in this
action, which requires an interpretation of
the contract between the parties, is wheth-
er defendant's obligation to pay the amount
in question has matured. The legal argu-
ments presented on this motion are essen-
tially the same as those advanced in Seal
Tite's two prior motions for summary judg-

ment.[1]  For the reasons set forth below, however, Seal Tite's third motion for summary judgment is granted.

The operative clause in the Seal Tite/Ehret contract which is now the subject of contention provides that the contract price of $1,330,450 shall be

> payable in the following manner: Ninety (90) percent monthly of work completed, within seven (7) days of receipt of payment by the Owner, or his Agent, provided statements of such work completed are rendered by the TWENTY–FIFTH OF EACH MONTH and are approved for payment by the architect.  The balance to be paid within thirty (30) days after acceptance and receipt of final payment by the owner of the building and after complete release of all liens arising out of this contract have been delivered to ehret, inc.

Of the total contract price, the affidavits and pretrial order show the undisputed amount of $101,767 due to Seal Tite from Ehret.  The sole question, then, is whether Ehret is liable for payment of this sum immediately.

Ehret contends that it is not liable to pay the undisputed sum to plaintiff until Ehret has been paid in full by the owners of the project, Bay Lea Associates.  Bay Lea, which is not a party to this action, has been experiencing considerable financial difficulties, and the affidavits show that to date Bay Lea owes Ehret more than $400,000 on the general contract with Ehret.  Ehret argues that the subcontract clause set forth at length above establishes receipt of payment from Bay Lea as a condition precedent to its obligation to pay Seal Tite.  Since Ehret has not yet received full payment from Bay Lea, defendant reasons, its obligation to pay Seal Tite the amount still due under the subcontract has not yet ma-

tured.  Ehret represents to the court that it will pay Seal Tite the amount due "if and when defendant Ehret, Inc., is paid the balance due it by the owner of the project."

The view advanced by Seal Tite in this dispute is that the contract clause in question does not establish a condition precedent.  Rather, it is an unconditional promise to pay with the time of payment postponed until the happening of a certain event, namely Ehret's receipt of payment from Bay Lea.  Under this interpretation, if payment from Bay Lea does not take place within a reasonable time, Ehret is still under obligation to pay Seal Tite under its subcontract.[2]  Seal Tite concludes that Ehret's refusal to pay the outstanding amount constitutes a breach of the subcontract between the parties.

As noted above, plaintiff has twice moved for partial summary judgment on this contract, once in 1982 and again in 1983.  The first motion was denied for the reason that the case was then in the very early stages of discovery and several material issues of fact remained in dispute.  Two such issues were the exact amount of money due Seal Tite, and whether plaintiff had substantially performed its obligations under the contract.  Thus, on the basis of pleadings which were woefully inadequate and an extremely sketchy factual record, Judge Debevoise was unable to find that summary judgment could be awarded at that time.

The following spring, plaintiff's second motion for summary judgment was denied.  Again, Ehret raised the spector of material facts which existed as to the background of the contract, which, if true, would preclude summary judgment.  For both these motions, Seal Tite was represented by different counsel than now appears on its behalf.

---

1.  Seal Tite unsuccessfully moved for summary judgment before the Honorable Dickinson R. Debevoise in July 1982 and again in March 1983, before the Honorable John W. Bissell.

2.  Seal Tite argues in the alternative that Ehret's receipt of a note and mortgage on the shopping mall property from Bay Lea is the equivalent of a receipt of payment which would then trigger

Ehret's obligation to pay Seal Tite.  That the mortgage and note is payment is contested by Ehret.  Because plaintiff's primary argument as to the interpretation of the contract clause is persuasive, however, there is no need to address its alternative arguments concerning the significance of the Bay Lea mortgage and note.

Seal Tite's then-counsel was unable to present the court with case law rebutting Ehret's interpretation of the contract clause. Again, due to the inadequacy of the record and the supporting legal arguments, this court, through Judge Bissell, concluded that the controversy was not ripe for summary judgment.

Today, the court is presented with a different scenario. Discovery has now been completed and on October 18, 1983, a final pretrial stipulation and order was signed. Prior factual disputes as to the performance of the contract and the amount due plaintiff have been resolved, and the amount of indebtedness has been stipulated. Seal Tite is now represented by new counsel, which has presented this court with case law supporting its position. On this motion, Ehret relies completely on the arguments presented in its opposition to Seal Tite's two prior summary judgment attempts. The factual issues allegedly in dispute earlier, however, have now been resolved, and Ehret has failed to produce any new evidence which could reasonably be said to raise a material factual issue. On the record now before this court, the sole dispute revolves around the interpretation of the payment clause. Since the terms themselves are not in dispute, the construction of the contract is a question of law to be resolved by the court, and not by the fact finder. *See Andreaggi v. Relis*, 171 N.J.Super. 203, 408 A.2d 455 (Ch.Div. 1979).

The clause in question is commonly known as a "pay when paid" clause. Numerous courts have considered the precise question now before this court as to whether such a clause is to be regarded as a conditional promise to pay, enforceable only if and when the condition precedent of payment from the owner has occurred, or as an unconditional promise to pay, with the payment being due within a reasonable time, regardless of whether the owner has paid. *See, e.g., Byler v. Great American Insurance Co.*, 395 F.2d 273 (10th Cir. 1968); *Thos. J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655

(6th Cir.1962); *Peacock Construction Co. v. Modern Air Conditioning Inc.*, 353 So.2d 840 (Fla.1977). As the New Jersey courts have not addressed the issue of the appropriate interpretation of a pay-when-paid clause, it is necessary to look to other jurisdictions for guidance in an attempt to predict how the New Jersey courts would resolve this question.

In *Thos. J. Dyer Co. v. Bishop International Engineering Co.*, the Sixth Circuit was presented with a factual setting very similar to this one. The payment clause in a contract between a subcontractor and a general contractor provided that

> [t]he total price to be paid to Subcontractor shall be $115,000.00 ... no part of which shall be due until five (5) days after Owner shall have paid Contractor therefor, provided however, that no more than ... per cent (90%) thereof shall be due until thirty-five (35) days after the entire work to be performed and completed under said contract shall have been completed to the satisfaction of Owners, and provided further that Contractor may retain sufficient moneys to fully pay and discharge any and all liens, stop-notices, attachments, garnishments and executions. Nothing herein is to be construed as preventing Contractor from paying to the Subcontractor all or any part of said price at any time hereafter as an advance or otherwise.

303 F.2d at 658–59. The defendant general contractor did not receive payment from the project owner and, accordingly, failed to pay the subcontractor. The subcontractor sued, and the parties each advanced the arguments now presented by Seal Tite and Ehret.

Noting that the basic rule requires that the intention of the parties controls the interpretation of the disputed clause, *id.* at 660, the court found that on the facts before it, the interpretation of the clause as an unconditional promise to pay was the proper construction and affirmed summary judgment in favor of the subcontractor. Because the cogent reasoning of the *Dyer* court is so directly applicable to the case at

hand, it is appropriate to quote its opinion at length.

It is, of course, basic in the construction business for the general contractor on a construction project of any magnitude to expect to be paid in full by the owner for the labor and material he puts into the project. He would not remain long in business unless such was his intention and such intention was accomplished. This is a fundamental concept of doing business with another. The solvency of the owner is a credit risk necessarily incurred by the general contractor, but various legal and contractual provisions, such as mechanics' liens and installment payments, are used to reduce this to a minimum. These evidence the intention of the parties that the contractor be paid even though the owner may ultimately become insolvent. This expectation and intention of being paid is even more pronounced in the case of a subcontractor whose contract is with the general contractor, not with the owner. In addition to his mechanic's lien, he is primarily interested in the solvency of the general contractor with whom he has contracted. He looks to him for payment. Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties. . . .

In the case before us we see no reason why the usual credit risk of the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the

parties. If such was not the intention of the parties it could have been so expressed in unequivocal terms dealing with the possible insolvency of the owner.

*Id.* at 660–61.

The court concluded that because the payment clause did not make reference to the possibility of the owner's insolvency, but did refer to the amount, time and method of payment, the clause was merely a provision "designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor." *Id.* *Dyer* represents the majority view. *See also Howard-Green Electrical Co. v. Chaney & James Construction Co.,* 12 N.C.App. 63, 182 S.E.2d 601 (N.C.Ct.App. 1971); *A.J. Wolfe Co. v. Baltimore Contractors, Inc.,* 355 Mass. 361, 244 N.E.2d 717 (1969); Restatement (Second) of Contracts § 227, comment b (1981); but *cf. Peacock Construction Co. v. West,* 111 Ga.App. 604, 142 S.E.2d 332 (1965).

The *Dyer* court's reasoning applies with equal force to the facts of the present dispute. There is no indication in the payment clause in the Ehret contract that Seal Tite was to undertake any risk that the owner of the project would become insolvent. The construction urged by Ehret would require that Seal Tite become, in effect, a creditor of Bay Lea Associates. Ehret's position that New Jersey recognizes that "pay when paid" clauses in construction contracts establish a condition precedent as long as they are "clearly and unambiguously set forth in the contract" is untenable. To support this view of New Jersey law, Ehret relies solely on *Zulla Steel, Inc. v. A & M Gregos, Inc.,* 174 N.J.Super. 124, 415 A.2d 1183 (App.Div. 1980), a case involving facts wholly distinguishable from our own. In *Zulla,* the pertinent clause provided that payment would be made as follows.

90% of the value of the work completed and approved by Owner and/or the Gen-

eral Contractor ... which shall be paid on or about the fifteenth day of each succeeding month. The retained percentage shall be paid thirty days after the completion and acceptance of the captioned job and receipt of final payment thereof by the General Contractor.

174 N.J.Super. at 128, 415 A.2d 1183.

The general contractor's contract with the owner provided for installment payments. Plaintiff/subcontractor commenced performance, but discontinued its work when it was not paid the progress payments according to the subcontract. At trial, the court concluded that defendant had breached its contract with plaintiff and further determined that this breach justified plaintiff's action in abandoning the project. The court rejected defendant's argument that trade custom permitted it to defer payment on the installments due plaintiff until defendant was paid by the owner, noting that

> [w]hatever may have been the trade custom, the contract between plaintiff and defendant was clear and unambiguous.... If we read into the contract a provision that defendant could defer payment until it was paid, we would improperly be writing a new contract for the parties.... Further, since the payment provision did defer payment of the retained percentage to plaintiff until defendant received full payment from the post office, an intent that such deferments apply to the installments is plainly negated.

*Id.* at 132–33, 415 A.2d 1183 (citations omitted).

While it is possible to read this language as an acknowledgement that the retained percentage portion need not have been paid unless and until payment was received from the owner, it is equally likely that had the court addressed the issue of the owner's insolvency—which it did not—it would have held that this same language merely set a reasonable time frame for payment. Ehret's broad reading of the case is contrary to the meaning of *Zulla* taken as a whole. It is clear that *Zulla* articulates a policy of protecting the subcontractor, recognizing the unique vulnerability of one in such a position. The court found it "impossible to believe that in a major construction project the parties would expect that a subcontractor would continue working even though there were material delays in payment to it." *Id.* at 131, 415 A.2d 1183.

The court further acknowledged that the public policy of New Jersey provides great protection to subcontractors through the Mechanics Lien Act, N.J.S.A. 2A:44–64 *et seq.* Taking *Zulla* in its entirety, and considering the distinctions of its facts from the present case, I cannot accept Ehret's interpretation of the language quoted above to conclude that New Jersey law would require that judgment in favor of Seal Tite be denied. Rather, in view of New Jersey's protective policy toward the subcontractor, it is more appropriate to follow the Sixth Circuit's well-reasoned analysis and interpretation of a "pay when paid" clause.

■ This result is also justified under general contract principles, which require that a court consider the general purpose of an agreement in construing the sense of particular clauses. *Borough of West Caldwell v. Borough of Caldwell*, 26 N.J. 9, 138 A.2d 402 (1958). It is also fundamental that contract provisions are to be strictly construed against the drafter. *Zulla Steel, Inc. v. A & M Gregos, Inc.*, 174 N.J.Super. at 133, 415 A.2d 1183. The disputed clause here was a portion of the printed contract prepared by Ehret.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." After a thorough review of the record, I find insufficient proof of a disputed material issue of fact. The parties and their experts have proffered little more than their opinions and beliefs as to the

meaning of the payment clause. Opinion testimony without more, however, cannot defeat summary judgment, and this is certainly true where the sole disputed issue is the interpretation of a legal document. This is properly the role of the court, not the jury. Accordingly, Seal Tite's motion for summary judgment in the amount of $101,767 is granted. Plaintiff will submit an order within 5 days. No costs.