In re TUBULAR PRODUCTS, INC., Debtor.

TUBULAR PRODUCTS, INC., Plaintiff,

v.

KEPASTTO DEVELOPERS AND CONTRACTORS, LTD., Defendant.

Bankruptcy No. 86–00240K.
Adv. No. 86–0163K.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 29, 1987.

Charles M. Golden, Philadelphia, Pa., for plaintiff/debtor.

Shelley V. Sodomsky, Philadelphia, Pa., Steven B. Markin, New York City, for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant adversarial proceeding is an accounts receivable action brought by the Debtor in a Chapter 11 proceeding for sums allegedly due to it from a general contractor for its supplying of certain materials as a sub-contractor in a construction project. Our analysis of the facts causes us to award the Debtor the sum of $15,-052.70, of the $28,003.00 which it seeks, deducting from the figure sought a "retainage" of ten (10%) percent, or $2,800.30, and an unpaid bill by the installer of the materials in the amount of $10,150.00.

We have previously held that garden-variety accounts receivable actions are core proceedings. *In re Windsor Communications Group*, 67 B.R. 692 (Bankr.E.D.Pa. 1986). We would categorize this action as such a garden-variety accounts receivable action and, consistent with our holding in *Windsor*, we determine this matter to be a core proceeding pursuant to 28 U.S.C. § 157(b)(3). Both parties, in any event, appear to have assumed that we will make a final determination in this case.

The trial of this matter was conducted before Chief Judge Thomas M. Twardowski, sitting in this Court's Reading station, on July 29, 1986, during the period of time when our predecessor, the Honorable William A. King, Jr., was no longer sitting, and prior to our taking the bench. Shortly after we were sworn in, Judge Twardowski was temporarily disabled as a result of a traffic accident, and all of the cases previously assigned to Judge King which Judge Twardowski had heard, including this matter, were re-assigned to us.

On October 2, 1986, upon our receipt of the file, we directed the parties to order the transcript of the trial before Judge Twardowski and to remit Proposed Findings of

Fact, Conclusions of Law, and any supporting Briefs at fifteen-day intervals after the completion of the transcript. All of the necessary materials—transcript, submissions by the parties, and exhibits—did not come into our possession until January 5, 1987. We are now preparing our decision in the form of Findings of Fact and Conclusions of Law, per Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a). As we note, the decision follows rather clearly when the facts are sorted out in suitable fashion, and hence recitation of the facts constitutes the greater portion of this Opinion. No extended discussion of any applicable legal principles is presented because we perceive no complex legal issue to be confronted in resolution of this case.

## FINDINGS OF FACT

1. The instant matter arises out of an agreement which was entered into on November 13, 1985, whereby the Debtor and Plaintiff herein, TUBULAR PRODUCTS, INC. (hereinafter "the Debtor"), was to supply to and install, as a sub-contractor, for the Defendant, KEPASTTO DEVELOPERS AND CONTRACTORS, LTD. (hereinafter "the Defendant"), as general contractor, certain steel stair systems in a building in the South Bronx Model Cities Project. (Complaint and Answer (hereinafter "C & A"), ¶ 3; Hearing of July 29, 1986, Exhibit (hereinafter "X")–P–1).

2. This agreement was memorialized by a letter dated November 13, 1985, and a subsequent written contract dated November 18, 1985, and required the Debtor to deliver and install nineteen (19) landings, sixty-five (65) units, and six hundred and forty-four (644) risers (colloquially, "steps") in the project for the Defendant, for a price of $76,000.00. (C & A, ¶ 5; X–P–1, X–D–1).

3. The Debtor hired Arrow Steel Window Corp. ("Arrow") to install the stairs. (Notes of Testimony, July 29, 1986 (hereinafter "T."), at 6).

4. On November 25, 1985, the Debtor commenced delivery of the stair systems, and Arrow commenced installation of the stairs approximately one week later. (T., at 6–7, 42).

5. The Debtor's delivery included three hundred and four (304) of the six hundred and forty-four (644) total of risers ordered in the contract, and Arrow installed one hundred and ninety-five (195) of the risers, for which it billed the Debtor the sum of $10,150.00. (T., at 28, 33).

6. The Defendant refused to make any payments on the stairs installed because of its claim that remedial work was required on them, which non-payment rendered the Debtor unable to pay Arrow, and, in turn, Arrow refused to do any further work due to the Debtor's non-payment for its services. (T., at 42–43, 54).

7. The Debtor filed for the instant bankruptcy case pursuant to Chapter 11 of the United States Bankruptcy Code on January 15, 1986.

8. Between January and March, 1986, Stuart Gordon, the Secretary-Treasurer of the Defendant, and Emanual Katz, the President of the Debtor, had numerous telephone conversations to attempt to resolve this matter. However, by March, the Defendant took the position that it would not make payments until the Debtor and Arrow returned to the job, and the Debtor could not pay Arrow to return to the job without payment from the Defendant, thus causing a stalemate. (*Id.* at 22, 3, 8–10, 40–43).

9. The parties agree that the value of the materials and services supplied by the Debtor and Arrow, respectively, on the job were worth a total sum of $28,003.00. (*Id.* at 8–9, 36).

10. The written contract of November 18, 1985, provided for a ten (10%) percent retainage of payment by the Defendant, and further provided that its terms could be modified in writing only. (X–D–1, ¶ s 32, 38).

11. Although in the course of his conversations with Mr. Gordon, Mr. Katz agreed to a twenty (20%) percent retainage, this was in the context of his understanding that the Defendant would, after

the retainage deduction, pay a net sum of approximately $28,000.00 to the Debtor for the materials and services provided. (T., at 19, 8–9).

12. In April and May, 1986, when the stalemate between the parties persisted, and after this action was filed on March 5, 1986, the Defendant hired C & C Ironworks (hereinafter "C & C") to complete the installation of the full complement of risers. C & C billed the Defendant $3,028.33 for remedial work on the risers already installed by Arrow and $7,626.24 for installing the one hundred and nine (109) risers supplied by the Debtor but not installed. To these figures, C & C added ten (10%) percent "overhead," raising the sum to $11,720.02, and then added another ten (10%) percent "profit" to that figure, resulting in a total billing to the Defendant of $12,892.04 for these services. (T. at 38–39; Additional X supplied after hearing at request of Judge Twardowski).

13. Arrow has never been paid the $10,150.00 charges for its services. (T., at 33, 37).

14. The Defendant has never paid the Debtor any sum, claiming that the $28,003.00 should be offset by a twenty (20%) percent retainage of $5,600.00; the $10,150.00 due to Arrow; and the $12,892.04 paid to C & C, which total a sum in excess of $28,003.00. (T., at 36–39).

## CONCLUSIONS OF LAW

■ 1. The contract in issue is a construction contract, involving installation as well as supply of goods, and therefore it is not within the scope of Article 2 of the Uniform Commercial Code. N.Y. UNIFORM COMMERCIAL CODE, § 2–106(1) (McKinney 1984). *See, e.g., Geelan Mechanical Corp. v. Dember Constr. Co.,* 97 A.D.2d 810, 468 N.Y.S.2d 680 (1983). *Cf. DeMatteo v. White,* 233 Pa.Super. 339, 336 A.2d 355 (1975).

2. Each party violated the terms of the contract due to the failure of the other to fully perform.

■ 3. The Debtor is entitled to the net value of the materials and services which it supplied to the Defendant as restitution; any other conclusion would result in unjust enrichment of the Defendant. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 374(1), and Comment a and illustration 2 thereto (1981).

4. The gross value of the goods and services supplied to the Defendant by the Debtor is $28,003.00.

■ 5. Arrow may have a lien against funds being held by the Defendant for the value of its services. N.Y. LIEN LAW, § 5 (McKinney 1966). In any event, if the Defendant had paid the Debtor, the Debtor would have had to pay Arrow out of this sum. Therefore, concomitant with a finding that the Defendant is obliged to pay Arrow, the sum due to Arrow, or $10,150.00, must be deducted from the gross value figure.

■ 6. The parties' written contract of November 18, 1985, provided for a ten (10%) percent retainage, and this provision was never modified in the manner required by the contract. This amount, or $2,800.30, must be deducted from the gross value figure.

■ 7. The Defendant is not entitled to deduct any of the sums paid to C & C from the gross value figure. The remedial work would most likely have been the responsibility of Arrow to correct without additional payment. Moreover, the Defendant may still be able to recoup the amount for this work from Arrow.

Since the Defendant has already reduced the figure to which the Debtor would have been entitled for providing and installing three hundred and four (304) risers because one hundred and nine (109) of the risers were not installed, it would be totally unjust, as the Defendant suggests, to deduct the installation charges of C & C from the gross value figure. While C & C's rate charged for performance of installation was somewhat higher than that of Arrow, it was the Defendant that chose not to pay anything to the Debtor and placed the

Debtor in a position where it could not possibly perform, thereby making it necessary to hire a contractor to replace Arrow to perform the additional installation. Among the options available to the Defendant was hiring Arrow itself to complete the work, which presumably would have resulted in performance of the work at the lower rate at which Arrow had charged for the same services on the one hundred and ninety-five (195) risers already installed pursuant to its contract with the Debtor.

8. The calculation of the amount due to the Debtor from the Defendant is therefore as follows:

| | |
|---|---|
| Gross Value of Goods and Services— | $28,003.00 |
| (Less) Amount Due to Arrow | 10,150.00 |
| (Less) Retainage | 2,800.30 |
| Sum Due | $15,052.70 |

9. Judgment must be entered in favor of the Debtor in the sum of $15,052.70, with the proviso that the Defendant hold the Debtor harmless from any liability to Arrow. An Order consistent with these Conclusions will therefore be entered.