Reversed and remanded for further proceedings consistent with this opinion.

VINEN CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. ALAN W. NAU CONTRACTING, INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 11, 1989—Decided May 15, 1989.

Before Judges MICHELS, LONG and MUIR, Jr.

*Irwin P. Burzynski* argued the cause for appellant (*Scarpone & Edelson*, attorneys; *James Scarpone* and *Irwin P. Burzynski*, on the brief).

*Jerome J. Convery* argued the cause for respondent.

The opinion of the court was delivered by

LONG, J.A.D.

The question presented on this appeal is whether plaintiff, Vinen Corporation (Vinen) is subject to damages for walking off a job it was performing under contract with defendant, Alan

W. Nau Contracting, Inc., (Nau) as a result of a dispute over payment. After the walk-off, Vinen sued Nau for breach of contract and Nau counterclaimed for damages. Vinen's suit was eventually dismissed and the case went to trial on Nau's counterclaim. The trial judge ruled that Vinen's walk-off was not justified and entered judgment in favor of Nau on its counterclaim in the amount of $50,407.06. Vinen appeals. We reverse.

These are the facts of the case: Nau entered into a contract with the McCrory Corporation to act as construction manager on a shopping center construction job in Woodbridge. Nau subcontracted with Vinen to act as the site contractor for the project. Vinen was to remove an asphalt parking lot, cut the site, fill it in where necessary and install sanitary sewer lines in preparation for the building of the stores.

Although there was nothing in the contract between Nau and Vinen indicating the method or timing of payments, it was understood that Vinen would submit a monthly invoice from which payment would be made. Settimio Nenna (Vinen's president) claimed that there was an agreement that Vinen would be paid within two weeks of the date an invoice was submitted to Nau. Alan Nau (Nau's president), on the other hand, claimed the agreement was that Vinen would get paid when McCrory paid Nau for the work.

Vinen started working on the McCrory project in late November 1984 and submitted an invoice for work done between November 20 and November 30 involving the removal of asphalt. Apparently this invoice was paid in a timely fashion. A second invoice was submitted for work done between December 1 and December 31, 1984. There was a change in the contract price because Vinen was required to bring in more expensive fill dirt. Vinen was paid for all the work done in December. With each payment, Nenna was required to sign a waiver of lien on behalf of Vinen indicating that he had received a check for the specified amount of work.

The third invoice covered the period from January 1 through January 31, 1985. By that time Vinen had removed the asphalt and done most of the excavation. Additional fill was necessary such that it raised the invoice to over $73,000 which Nau refused to pay, arguing about the price of the fill obtained by Vinen. According to Nau, the parties decided to sever the cost of the fill from this invoice and resolve the dispute at a later time. This reduced the invoice to $48,640. In addition, Nau testified that he had communicated to Nenna an intention to set-off approximately $11,000 that Vinen owed for equipment Vinen rented from Nau on an unrelated job. The idea for the set-off procedure with respect to this third invoice came from Nau's company controller, Joseph Barone, who had been hired by Nau "to straighten out the office." According to Barone, before Nenna came in to pick up his money, Barone called him and informed him of how the payment would be made in order to settle the accounts. He explained that Nenna would receive three checks: one for $37,192 which represented the $48,640 minus the approximate amount of $11,000 owed by Vinen to Nau; one for $1,957.50 made out to VSD Construction, Inc. for truck rental owed by Nau and a third check made out to Vinen Corporation for $2,610 for equipment rental on an unrelated job. According to Barone, Nenna agreed but indicated he would discuss it with Nau. According to Nenna, however, when he spoke with Barone on March 15, 1985 he agreed to accept the $48,640 but nothing was said about any other reductions in that amount.

When Nenna met Barone on March 18, 1985 to receive payment, Barone gave him the three checks. One was made out to Vinen for $37,192. Nenna protested, indicating that the check was to be for $48,640. Barone again explained the $11,000 difference. Nenna argued that the $11,000 had nothing to do with his work for Nau on McCrory's project and claimed entitlement to payment for the full $48,640. Barone proffered the other unrelated checks and a release of lien for the full amount of $48,640, which Nenna refused to sign because he did

not receive the full amount and because he believed that signing the waiver would end his claim to the disputed $11,000. Thereafter, Nenna went directly to the job site and ordered his foreman to demobilize.

Notwithstanding the ordered demobilization, Nenna met with Nau within a day. At the meeting, Nau explained to Nenna that the set-offs were an attempt to reconcile outstanding bills. Nau attempted to convince Nenna to sign a release of lien. He stated that unless Nenna signed the release he would receive none of the payment for the period from January 1 to January 31. According to Nau, without the release McCrory would not turn over the next monthly payment. Nau testified that Nenna refused to sign and said that if he did not receive a check for $48,640, he would pull his men off the job. The issue was not resolved and Nenna's men never returned to the job. Nau then hired Diversified Landmark, Inc. to complete Vinen's work at a cost of $95,185.68. In addition to that amount, Nau spent $50,407.06 in labor, machinery and materials to finish the job.

The trial judge found that Nenna "reasonably concluded ... that the effect of signing the waiver as to the difference between the $48,640 and the $37,192 was that he would be foregoing that amount." She concluded that Nau had no right to utilize a self-help set-off procedure to obtain payment of $11,000 from Vinen, but questioned whether that conduct justified Vinen's walk-off the job. She concluded that it did not:

So that what we're dealing with here, as I've also indicated, is the nonpayment of the set-off amount and I do not find that that is either a substantial amount considering the two-hundred and eleven thousand some odd figure in the contract price at the time of the walk-off and neither does it represent a prolonged nonpayment. It was a one shot nonpayment. Nau therefore has shown by the preponderance of the evidence that Vinen's walk-off was a breach of its commitment to perform the job and was not justified by Nau's nonpayment of the $11,000 set-off figure.

The judge went on to calculate Nau's damages at the costs of its own labor, equipment and materials which amounted to $51,846.50 less $1,439.44 for fuel which was not documented by receipts.

In *Zulla Steel, Inc. v. A & M. Gregos, Inc.*, 174 *N.J. Super.* 124 (App.Div.1980) an action was brought by a subcontractor, hired to do structural work on a construction project, against the general contractor for failure to make progress payments when due under the contract. The general contractor counterclaimed for breach of contract, claiming that plaintiff had improperly performed its work. Progress payments due under the $370,000 contract were consistently late, such that by December 15, 1975 when the subcontractor had completed more than 86 percent of the work, it had been paid only $118,792 against invoices of $276,508. By February 1976, the subcontractor had received only $260,712 but had completed $304,000 worth of work. The subcontractor presented evidence that the general contractor's failure to pay timely meant that the subcontractor could not pay its obligations and thus could not complete its contract. We affirmed the trial judge's finding that the general contractor's breach of the contract was material. *Id.* at 129–131. As to the walk-off, we held:

> It is true that it has been held that where a contract is entire so that the payment of the consideration in installments is not for a particular performance, nonpayment does not justify the contractor in failing to complete the work. But there is contrary authority. Certainly the current approach in contract construction is to honor the expressed or presumed intention of the parties. We find it impossible to believe that in a major construction project the parties would expect that a subcontractor would be obliged to continue working even though there were material delays in payment to it. Ordinarily the parties would expect that the subcontractor would be using the installment payments to satisfy its own expenses. While we do not suggest that every delay in payment will justify a contractor in terminating performance under an installment contract, here there was a substantial underpayment for prolonged period of time. In these circumstances we hold that plaintiff was justified in discontinuing performance. [*Id.* at 131–132; citations omitted].

It was upon this language that the trial judge relied in analyzing the relationship between Nau's breach of the contract and Vinen's concomitant breach by abandoning the job.

At the heart of the judge's opinion was her apparent conclusion that under *Zulla*, a delay in payment arising out of a dispute over $11,000 on a total contract price of $211,923 did not justify Vinen's walk-off. The problem with this analysis is

that it misses the point of the conflict between the parties. This case did not simply involve the wrongful withholding of the $11,000 by Nau.  If it had, the trial judge's conclusion might well be sustained.  What is involved here is much different:  it is the wrongful withholding of $11,000 by Nau coupled with Nau's demand that Vinen sign a release of lien including the unpaid $11,000 or be paid none of the amount concededly owing or any future amount.  Thus, this is not a delayed payment case but one involving a unilateral reduction in the negotiated contract price by Nau to which it required Vinen to agree by way of the release of lien.  The trial judge should have analyzed Nau's actions not in terms of a *Zulla* type delay but in terms of materiality.  *See Medivox Prod., Inc. v. Hoffmann La-Roche, Inc.,* 107 *N.J. Super.* 47, 58–60 (Law Div. 1969).  Viewed that way, the conclusion is inescapable that Nau's requirement that Vinen permanently waive the $11,000 or forfeit payment justified Vinen's walk-off.  In our view, Nau's action constituted failure to perform an essential obligation under the contract and was a material breach warranting Vinen's election to terminate.  *See Frank Stamato & Co. v. Borough of Lodi,* 4 *N.J.* 14, 21 (1950).

We thus reverse the judgment in favor of Nau and remand the matter to the trial judge for the entry of judgment in favor of Vinen.  This makes it unnecessary for us to address the issue of the measure of damages.

Reversed and remanded.