**In re BUILDERS ALLIANCE, INC., Debtor.**

**BUILDERS ALLIANCE, INC., Plaintiff,**

v.

**C. & J. CLARK RETAIL, INC., Defendant.**

**Bankruptcy No. 89–10303S.**
**Adv. No. 89–0154S.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 23, 1989.

Marjorie L. McMahon, Philadelphia, Pa., for debtor-plaintiff.

Michael Bloom, Mark J. Manta, Philadelphia, Pa., for defendant.

Janet A. Sonnenfeld, Michael Power, Philadelphia, Pa., for creditors' committee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURAL HISTORY

This is an adversarial proceeding in which the Debtor, BUILDERS ALLIANCE, INC., a general contractor operating as a Chapter 11 debtor-in-possession, seeks to collect an alleged account receivable from the Defendant, C. & J. CLARK RETAIL, INC., a shoe retailer on whose behalf it contracted to renovate a shopping-center store site in Moorestown, New Jersey. Although the record is somewhat scanty, the facts appear in large measure indistinguishable from those presented to us in another matter before us about a year ago, *In re Temp-Way Corp.*, 82 B.R. 747 (Bankr.E.D.Pa.1988). Therefore, we come to the same result that we reached in the *Temp-Way* matter. We decline to require the Defendant to pay the Debtor for its services when the Debtor, in violation of the terms of its contract with the Defendant, has failed to pay its subcontractors. However, we condition our decision on obliging the Defendant to in fact pay these subcontractors.

The Chapter 11 case underlying this proceeding was filed by the Debtor on January 24, 1989. The instant adversary matter was one of two proceedings commenced by the Debtor against this same Defendant on February 28, 1989. The other proceeding (Adversary No. 89–0151S) was brought in connection with a similar fact-situation concerning a shopping-center site in Smithaven, New York. On April 3, 1989, the Defendant filed Answers and Counterclaims to the Debtor's Complaints in both actions, contending that it was entitled to setoffs because the Debtor had failed to pay its subcontractors, and that the liability to do so would consequently fall upon the Defendant itself. It also filed a motion

seeking relief from the automatic stay for permission to assert such setoffs in both of these proceedings. On April 19, 1989, this motion and both proceedings came before us for trial.

Adversary No. 89–0151S was thereupon settled by a Stipulation in which the Debtor withdrew its claims and the Defendant agreed to set aside and administer a fund to be paid to the Debtor's subcontractors. The reason that this proceeding and not the instant proceeding was resolved was the alleged existence of a New York law, applicable to the Smithaven project, providing subcontractors with a broad right to file mechanics' liens against an owner to collect any sum due to them. *See, e.g., In re Tubular Products, Inc.*, 69 B.R. 582, 585 (Bankr.E.D.Pa.1987). It was apparently correctly alleged that New Jersey has no comparable law. *See, e.g., Baldyga Construction Co. v. Hurff*, 174 N.J.Super. 616, 617–18, 417 A.2d 110, 111 (1980).

At trial, the parties recited several Stipulations of Fact and then they each called one witness. George Pafundi, the President of the Debtor, on its behalf; and Cynthia Westphal Salvo, the Director of Store Design for the Defendant, on behalf of the Defendant. The Defendant, at trial, submitted a Memorandum of Law addressing both Adversary No. 89–0151S and this proceeding. We allowed the Debtor until May 1, 1989, and the Defendant, after a one-day extension, until May 9, 1989, to submit further briefing. Since this is an adversary proceeding, we are obliged to submit our decision in the form of Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule (hereinafter "B.Rule") 7052 and Federal Rule of Civil Procedure 52(a). Little extended discussion of legal issues is necessary because of our adoption of our previous reasoning in *Temp-Way*, *supra*.

### B. FINDINGS OF FACT

1. On November 29, 1988, the Debtor entered into a contract captioned Abbreviated Form of Agreement Between Owner and Contractor (hereinafter "the Contract") to perform certain renovations at a total cost of $62,507.00 in a Hanover Shoes store with the Defendant, which owns over 500

shoe stores under various names throughout the country and planned to open in the Moorestown Mall in Moorestown, New Jersey.

2. Payments on the Contract were to be made according to the following schedule:

$18,752.10 upon signing of the contract

$18,752.10 upon 50% completion of the work

$18,752.10 upon owners possession of store

$ 6,250.70 upon final completion and owner approval

3. The first two payments were made in accordance with this schedule. The Debtor seeks, in this proceeding, the last two payments totalling $25,002.80, which the Defendant has admittedly not paid to it.

4. The Contract includes, at paragraph 15, the following provisions:

15.2 Payments may be withheld on account of ... (3) failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment, ...

.    .    .    .    .

15.4 Final payment shall not become due until the Contractor has delivered to the Owner a complete release of all liens arising out of this Contract or receipts in full covering all labor, materials and equipment for which a lien could be filed, or a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees....

5. The Debtor has admittedly not paid the following subcontractors on this job the following respective sums:

| | |
|---|---|
| Larsaro (sp.?) Tile | $ 1,790.00 |
| Ellis Plumbing | 488.00 |
| Lou's Electric | 2,881.00 |
| Rabinowitz Glass Co. | 5,000.00 |
| Engelke & Co. | 19,447.50 |
| TOTAL | $29,606.50 |

Other small sums are apparently owed, because the Debtor admits that the total amount which it owes to subcontractors is $30,006.50.

6. The Debtor's subcontracts all included the following provision:

THE CONTRACTOR SHALL MAKE THE LAST PAYMENT TO SUBCONTRACTOR AFTER ALL MATERIALS AND LABOR INSTALLED BY SAID SUBCONTRACTOR HAVE BEEN COMPLETED, APPROVED BY THE SAID ARCHITECT AND SATISFACTORY EVIDENCE FURNISHED TO CONTRACTOR BY SUBCONTRACTOR THAT ALL LABOR AND MATERIAL ACCOUNTS FOR USE ON THIS PARTICULAR WORK HAVE BEEN PAID IN FULL, AND FOR WHICH PAYMENT HAS BEEN MADE BY SAID "OWNER" TO SAID CONTRACTOR.

7. The Defendant accepted the store on or about January 31, 1989. The work was about ninety-five (95%) percent completed as of January 24, 1989, when the Debtor filed bankruptcy.

8. One of the subcontractors, Lou's Electric, temporarily cut off the electric system in the store shortly after the Defendant took possession because the Debtor had remitted a payment of $2,000 to it by a check which had been returned to it for insufficient funds.

9. On March 27, 1989, Eugene A. Groves, the General Manager of the Moorestown Mall, wrote to the Defendant, advising that he had paid certain subcontractors' invoices attached thereto, which attachments were not produced at trial.

10. Mr. Pafundi claimed that he had "properly" paid all subcontractors because of the effect of the term in their contracts quoted at Finding of Fact 6, page 205 *supra*, requiring that the subcontractors be paid only upon payment by the owner (the "pay when paid" clause). With respect to the sums not paid to the subcontractors, he contended that payments were not due because payments had not yet been made to the Debtor by the "owner," *i.e.*, the Defendant. He therefore contended that the Debtor had not violated ¶ 15.2(3) of the Contract, quoted at Finding of Fact 4, page 205 *supra*.

11. Mr. Pafundi further testified that all of the subcontractors had promised not

to file mechanics' liens in connection with their services on the project and had not, to his knowledge, done so. Therefore, he contended that the Debtor had not violated ¶ 15.4 of the contract, also quoted at Finding of Fact 4, page 205 *supra.*

12. The Debtor provided no assurance that the subcontractors would be paid from any remittances made to it by the Defendant. In fact, it suggested, in argument and its Brief, that it was precluded by certain unspecified provisions of the Bankruptcy Code from making any distribution to the subcontractors and, for that reason, was unable to comply with ¶ 15.2(3) of the Contract.

## C. CONCLUSIONS OF LAW

1. *This court has jurisdiction to hear and determine this matter.*

This proceeding is properly classifiable as a "garden-variety accounts receivable proceeding" brought by a debtor. We have consistently held that such proceedings are core in nature. *See, e.g., In re Jackson,* 90 B.R. 126, 128–31 (Bankr.E.D.Pa.1988); and *In re Windsor Communications Group, Inc.,* 67 B.R. 692, 694–96, 700 (Bankr.E.D. Pa.1986). Furthermore, in adherence with B.Rule 7008(a), the Debtor pleaded that the proceeding was core pursuant to 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(O), and the Defendant admitted same. We believe that these pleadings constitute the requisite "express consent," *see* B.Rule 7012(b), allowing us, pursuant to 28 U.S.C. § 157(c)(2), to determine this matter, even assuming *arguendo* that it is noncore. We shall therefore determine it.

2. *The Debtor's violation of the Contract clauses allowing the Defendant to withhold payment because the Debtor has failed to make payments to subcontractors and providing that final payment is not due until releases of liens or receipts for payment to subcontractors in full are provided establish viable defenses for the Defendant to this proceeding.*

■ The most effective defense articulated by the Defendant is the straightforward assertion that the Debtor has failed to satisfy the following two conditions precedent before rendering it liable for payment to the Debtor: (1) It has failed to make payments properly to subcontractors, as required by ¶ 15.2(3) of the Contract; and (2) It has delivered neither a release of all liens by the subcontractors to the Defendant nor receipts in full covering all labor, materials, and equipment supplied by the subcontractors, as required by ¶ 15.4 of the Contract.

In our decision in *Temp–Way, supra,* we held that clauses almost identical to those noted above *were not* ambiguous, *were* material, *were not* obviated by any subjective misunderstanding of their meaning on the part of the debtor-subcontractor, *were not* waived by a prior course of conduct of the general contractor-defendant of paying the debtor before the debtor paid its subcontractors in turn, and that such clauses *were* therefore totally enforceable against the debtor. None of the arguments raised by the debtor there opposing literal enforcement of the contract are even advanced here.

We find little difference in the wording of the Contract here and that in *Temp–Way.* If anything, the Contract here is clearer, because the requirement of full performance of payments to subcontractors is not beclouded by the argument of the debtor in *Temp–Way* that the contract there could read to allow the contractor to alternatively produce merely a schedule of outstanding accounts and not to necessarily require the payments to be made themselves.

The Debtor, per the testimony of Mr. Pafundi, attempted to make much of the inclusion of the word "properly" in ¶ 15.2(3). Mr. Pafundi contended that payment to the subcontractors had been "proper" because the subcontracts did not require that payment be made to the subcontractors until payment was made to it by the owner. We are unconvinced by this contention for several reasons. First, the liability of the Defendant to the Debtor is

established solely by the terms of the Contract, not by the terms of any subcontracts to which it is not a party. All that is relevant, for purposes of determining whether the conditions of the Contract have been met, are the terms of the Contract itself. Furthermore, in *Seal Tite Corp. v. Ehret, Inc.*, 589 F.Supp. 701, 703–05 (D.N.J.1984), the court held that a very similar "pay when paid" clause in a subcontract was unenforceable under New Jersey Law.

Secondly, we note that, at present, the Debtor owes over $5,000 more to the subcontractors than it is owed by the Defendant. It is therefore apparent that payments already made to the Debtor by the Defendant, some of which was undoubtedly due to subcontractors for *past* performances of services, have been appropriated by the Debtor for expenditures other than payment in turn to the said subcontractors. Assuming *arguendo* that the Debtor's responsibility to pay its subcontractors is related to whether it has been paid by the owner, we refuse to believe that it is "proper" to conclude that the owner is obliged to continue to pay the Debtor again and again indefinitely, even when the Debtor repeatedly displays no inclination to pay its subcontractors in turn.

Finally, we are not impressed with the Debtor's admission that it will not pay the subcontractors even if it is paid by the Defendant because the Bankruptcy Code prohibits it from doing so. We are not sure that such payments would not simply be made in the ordinary course of the Debtor's conduct of its business, which it is allowed to continue to effect without court order. *See* 11 U.S.C. § 363(c)(1). Furthermore, if the Debtor had doubts about the propriety of paying the subcontractors, it could seek to obtain permission to make such payments, as the subcontractors may be entitled to same on equitable grounds. *See In re Gebko Investment Corp.*, 641 F.2d 143, 146–49 (3d Cir.1981); *Temp–Way, supra*, 82 B.R. at 753, and *In re Temp-Way Corp.*, 80 B.R. 699, 704–05 (Bankr.E.D.Pa.1987).

There is, therefore, little doubt in our mind that the Debtor has failed to "properly" pay its subcontractors. One subcontractor, Lou's Electric, apparently became so incensed with the Debtor's failure to "properly" pay it that it sabotaged the store's electrical system, to the obvious detriment of the Defendant.

We also note that neither of the disjunctive conditions of ¶ 15.4 were satisfied. No release of liens was delivered, and Mr. Pafundi's glib "assurances" that no liens will be imposed is no substitute. His breach of his promise to pay them may cause subcontractors to conclude that they are no longer bound to their promises not to impose liens for their services. The alternative performance permitted in ¶ 15.4—providing receipts covering all payments due to subcontractors—was also not accomplished. Such receipts could not be produced because the payments were not made.

The Debtor has therefore failed to satisfy contract provisions which we construe as material conditions precedent to allowance of a recovery from the Defendant. *See, e.g., American Handkerchief Corp. v. Frannat Realty Corp.*, 17 N.J. 12, 19–20, 109 A.2d 793, 797 (1954); *Duff v. Trenton Beverage Co.*, 4 N.J. 595, 604–05, 73 A.2d 578, 583 (1950); and *Moorestown Management, Inc. v. Moorestown Bookshop, Inc.*, 104 N.J.Super. 250, 262–63, 249 A.2d 623, 630 (1969). It therefore cannot prevail in this action.

3. *The Defendant's alternative defenses, grounded on a right to setoff, and the issues raised in the Debtor's Brief are not significant to the resolution of this matter.*

Our foregoing resolution of this controversy renders any discussion of the Defendant's alternative defenses unnecessary. We therefore shall discuss them and several other issues raised by the Debtor in its Brief in summary fashion.

The principal defense argued by the Defendant in its initial Memorandum of Law submitted at trial was that it is entitled to set off its potential liability to the subcontractors against the balance owed by it to

the Debtor. In making this argument, it relied heavily upon *In re Fulghum Construction Co.*, 23 B.R. 147, 151–53 (Bankr. M.D.Tenn.1982). The proceeding in *Fulghum* was in some respects similar to the instant proceeding, as it was an accounts receivable proceeding brought by a trustee of a contractor against an owner whose defense was based upon its having made payment to the debtor's subcontractors. However, *Fulghum* appears distinguishable from the case at bar on several bases. First, several of the subcontractors there actually did place liens against the owner's property. Secondly, the owner had already directly paid at least some of the subcontractors. Finally, the parties' contract specifically provided the owner with authority to pay subcontractors who had obtained liens against the owner, as several had proceeded to do. In the absence of such compelling facts, the restrictively-applied doctrine of setoff is of doubtful pertinence. *See e.g., In re New York City Shoes, Inc.*, 78 B.R. 426, 428–32 (Bankr.E.D.Pa.1987); and *In re Lessig Construction, Inc.*, 67 B.R. 436, 440–43 (Bankr.E.D.Pa.1986). *Compare In re J.A. Clark Mechanical, Inc.*, 80 B.R. 430, 433 (Bankr.N.D.Ohio 1987) (owner may not assert a right of setoff against a debtor-contractor based upon a mere assertion of potential liability to subcontractors).[1]

The substance of the Debtor's Brief is a rebuttal of several "straw issues." The mid-portion attacks the aforesaid setoff theory of the Defendant. The final portion addresses the fact that, under New Jersey law, the subcontractors have neither the right to impose a lien nor to otherwise claim any rights to payment directly against the owner without a contractual basis for doing so. The initial portion rebuts any notion that the Defendant could assert a theory that it is holding monies in trust for the subcontractors. In this portion, it is incorrectly asserted that the

*Temp–Way* decision was based on a trust theory, which the Debtor contends we justified there by the language of that contract which permitted the general contractor to withhold payments from the subcontractor if the subcontractor failed to perform its obligations to its materialmen. As we stated at pages 206–07 *supra,* we consider the language of the Contract here to be, if anything, less ambiguous than the contract at issue in *Temp–Way* in requiring that the Debtor make payments to the subcontractors as a condition precedent to payment.

Unfortunately, the Debtor presents no effective arguments to rebut the straightforward contract analysis upon which we hold that the case should be properly decided at pages 206–07 *supra.* Therefore, the Debtor's Brief does little to convince us that a judgment in favor of the Defendant can be avoided. However, in light of our reluctance to rule in the Defendant's favor on its setoff claim and our ruling in its favor on another independent ground, the Defendant's motion for relief from the automatic stay appears moot and therefore will be denied.

4. *Our ruling in favor of the Defendant assumes that the Defendant will hold the Debtor harmless from any liability to the subcontractors up to the amount of $25,002.80, and we will therefore place an obligation to remit this amount to the subcontractors upon the Defendant.*

A ruling in favor of the Defendant presumes that the sums otherwise payable to the Debtor will find their way into the pockets of the subcontractors. A somewhat shadowy issue, not addressed by either party in their briefing, is the significance of the possible direct payments to the subcontractors by the owner of the Moorestown Mall. The Defendant shied away from this issue because it apparently feared that, if payment by the Mall were

---

1. There are other reasons why setoff may be inapplicable here. Mutuality of the debts is questionable. *See In re Balducci Oil Co.*, 33 B.R. 847, 851 (Bankr.D.Colo.1983); *In re Virginia Block Co.*, 16 B.R. 560, 562 (Bankr.W.D.Va. 1981); and 4 COLLIER ON BANKRUPTCY, ¶ 553.04[1], [2], at 553–17 to 553–21 (15th ed. 1988). Also, since the Moorestown contract was completed post-petition, it may not meet the "prepetition debt requirement" of § 553(a). *Compare Lessig, supra,* 67 B.R. at 442.

established, the subcontractors *would* have been paid, and the Defendant's ability to assert ¶s 15.2(3) and 15.4 of the Contract as defenses would have been impeded. The Defendant suggested, but failed to prove, that it would be obliged to reimburse the Mall for any such payments and, if rendered liable in this suit, would be subject to double liability. The Debtor shied away from this issue also, possibly because it feared that it would have been grossly inequitable for it to emphasize that it would then become the unintended beneficiary of the Mall's "gratuitous" payment to the subcontractors. Clearly, it should not receive a windfall of payment in partial consideration of its responsibility to pay obligations which have already been satisfied by another party.

In *Temp–Way*, we directed the defendant to pay the sum of $42,820.59 in issue directly to the debtor's materialmen, thereby preventing a potential windfall to the defendant from avoiding liability to the debtor and not being obligated to pay the materialmen, which obligation was the basis of its successful defense. In *Tubular Products, supra*, 69 B.R. at 586, we similarly obligated the general contractor-defendant to hold the subcontractor-debtor-plaintiff harmless from an obligation to a sub-subcontractor which we deducted from the amount due from the defendant to the debtor. Also, in the Stipulation settling Adversary No. 89–0151S, the Defendant agreed to set aside and administer a fund used to satisfy the claims of subcontractors as a condition for the dismissal of that proceeding by the Debtor.

In similar fashion, our Order here will contain a directive that the Defendant hold the Debtor harmless from claims of subcontractors equal to the amount which the Defendant admittedly has not paid to the Debtor under the Contract, *i.e.*, $25,002.80.

## D. CONCLUSION

An Order consistent with the foregoing will be entered by us.

### ORDER

AND NOW, this 23rd day of May, 1989, after trial of the above proceeding and the motion of the Defendant therein for relief from the automatic stay in order to assert a right of setoff in this proceeding on April 19, 1989, and upon consideration of the post-trial submissions of the parties, it is ORDERED AND DECREED as follows:

1. Judgment is entered in the above-captioned adversary proceeding in favor of the Defendant, C. & J. CLARK RETAIL, INC., and against the Plaintiff–Debtor, BUILDERS ALLIANCE, INC.

2. As a condition of the foregoing, the Defendant shall hold the Debtor harmless from liabilities to its subcontractors on the Contract of November 29, 1988, up to the amount of $25,002.80.

3. The Defendant's motion for relief from the automatic stay in the Debtor's main bankruptcy case is DISMISSED as moot.